NO. 95-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

FILED

SEP 11 1996

Smith
SUPREME COURT
STATE OF MONTANA

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

TROY MICHAEL JONES,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Seventh Judicial District,
              In and for the County of Richland,
              The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Appellate Defender (argued),
          Helena, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Cregg Coughlin, Ass't Attorney General (argued),
          Helena, Montana

          Mike Weber, Richland County Attorney, Sidney,
          Montana

      For Amicus Curiae:

          Keith A. Maristuen, Chair, and Michael G. Alterowitz
          Attorneys at Law (for Ethics Committee, State Bar
          of Montana), Helena, Montana

          Michael Donahoe, Attorney at Law (for Criminal
          Defense Section, State Bar of Montana), Helena,
          Montana

                         Argued:  April 19, 1996
                  Submitted:  April 30, 1996
                    Decided:  September 11, 1996

Filed:

_____
            Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Troy Michael Jones (Jones) appeals from the judgment and sentence entered by the Seventh Judicial District Court, Richland County, on a jury verdict finding him guilty of the offense of felony assault. We reverse and remand.

The dispositive issue on appeal is whether the District Court abused its discretion in denying Jones' counsel's motion to withdraw.

The State of Montana (State) charged Jones with felony assault, in violation of § 45-5-202, MCA, alleging that Jones purposely or knowingly caused bodily injury to Kirby Sowers (Sowers) by striking Sowers "about the head and face with a beer bottle. . ." T. R. Halvorson (Halvorson) was appointed to represent Jones and, thereafter, Jones pled not guilty to the charged offense. Trial was set for November 3, 1994. Two days prior to trial, Halvorson moved to withdraw as Jones' counsel. The State opposed the motion and requested an evidentiary hearing on the grounds for withdrawal.

The hearing on Halvorson's motion to withdraw as Jones' counsel was not, strictly speaking, an evidentiary hearing; no sworn testimony was presented. The District Court merely invited Halvorson to establish a factual basis for his motion and Halvorson did so through narrative statements and various arguments.

Halvorson based his motion, in part, on Rules 1.16(a) (1) and (b)(1), Montana Rules of Professional Conduct (MRPC). In this regard, Halvorson told the District Court that Jones had stated an

intent to testify falsely.

Halvorson also based his motion on Rule 1.16(b) (3), MRPC. The bulk of Halvorson's statements, disclosures and arguments in support of his motion to withdraw were based on his belief that Jones' decision to reject the plea agreement Halvorson had negotiated with the State and proceed to trial was repugnant or imprudent. Halvorson detailed the offense and Jones' role in it, and disclosed Jones' admission that he "punched [Sowers] with a bottle of beer in [Jones'] right hand." Halvorson indicated that a felony assault had occurred and that Jones admitted having committed it. In addition, Halvorson stated that he did not have a defense to present to a jury on Jones' behalf. He opined that it was repugnant to deny criminal culpability to a jury where on an "open and shut basis . there is guilt." Halvorson also indicated that Jones' decision to go to trial rather than accept a plea agreement "when [Jones] stands virtually no chance of an acquittal" was repugnant to him and constituted good cause for his withdrawal as counsel.

Jones denied that he had communicated an intent to testify falsely to Halvorson and stated that, in fact, he did not intend to testify at his trial. He asserted that Halvorson had "lied about a few things" and that "[he] disagree[d] with everything [Halvorson] said, and that's fine if [Halvorson] drops out of [the] case." The District Court indicated that it was accepting Jones' statements as "argument and testimony."

Based on Jones' statement that he did not intend to testify,

3

the District Court denied Halvorson's motion to withdraw. Several months later,jury convicted Jones of felony assault and the District Court sentenced him and entered judgment. Jones appeals.

Did the District Court abuse its discretion in denying Halvorson's motion to withdraw as Jones' counsel?

Jones argues on appeal that the District Court abused its discretion in denying Haivorson's motion to withdraw. While advancing alternative bases for his argument, Jones' primary contention is that Halvorson had a conflict of interest which resulted in a denial of Jones' constitutional rights to a fair trial and to the effective assistance of counsel. The State disagrees, arguing that no conflict of interest existed in this case.

The grant or denial of a lawyer's motion to withdraw is within the discretion of the district court. See United States v. Keys (9th Cir. 1994), 67 F.3d 801, 807; Petition of Jones (1963), 143 Mont. 309, 309-10, 387 P.2d '712, 712. We review such discretionary matters to determine whether the court abused its discretion. See State v. Craig (1995), 274 Mont. 140, 149, 906 P.2d 683, 688 (citations omitted)

### GENERAL *DUTIES OF ATTORNEY TO CLIENT*

The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee a criminal defendant the right to the assistance of counsel. Mere representation by counsel is not sufficient, however; the assistance must be effective to give true meaning to that right and to the right to a fair trial. State v. Enright (1988), 233 Mont.

4

*225, 228, 758* P.2d *779, 781.* Moreover, a criminal defendant's constitutional right to the effective assistance of counsel is comprised of two correlative rights: the right to counsel of reasonable competence and the right to counsel's undivided loyalty. State v. Christenson (1991), 250 Mont. 351, 355, 820 P.2d 1303, 1306 (citations omitted). In the latter regard, the Sixth Amendment right to counsel contemplates the assistance of an attorney devoted "solely to the interests of his client." Frazer v. United States (9th Cir. 1994), 18 F.3d 778, 784 (quoting Von Moltke v. Gillies (1948), *332* U.S. 708, 725-26, 68 S.Ct. 316, 324, 92 L.Ed. 309, 322). The duty of loyalty is "perhaps the most basic of counsel's duties." Strickland v. Washington (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696.

An attorney owes a duty of confidentiality to his or her clients. Rule *1.6,* MRPC. The duty of confidentiality is correlative to an attorney's duty of loyalty. See, e.g., Damron v. Herzog (9th Cir. 1995), 67 F.3d 211, 215. Thus, a defense attorney's disclosure of confidential information in violation of Rule 1.6, MRPC, necessarily implicates the attorney's duty of loyalty as well as the defendant's constitutional right to the effective assistance of counsel.

### *DISCLOSURE OF PERJURY*

Rule 1.16, MRPC, provides in pertinent part:

(a) . . a lawyer . . . shall withdraw from the representation of a client if:
(1) the representation will result in violation of the rules of professional conduct or other law;
. . .
(b) . . a lawyer may withdraw from representing a

5

> client . . if:
> (1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent. . .

Halvorson contended that his continued representation of Jones would result in a violation of a rule of professional conduct or other law because Jones intended to commit perjury.

Rule 1.16(a)(1), MRPC, requires an attorney to withdraw where continued representation will result in a violation of the rules of professional conduct or other law. Halvorson stated that he had a conversation with Jones in which Jones communicated an intent to testify falsely and, in response, he informed Jones of the consequences of perjury and that he could take no part in presenting perjured testimony to the District Court. He further stated that he gave Jones a weekend over which to further consider Jones' intent to commit perjury and his advice in this regard. The record does not reflect that Halvorson checked back with Jones after the weekend passed, to ascertain whether Jones had reconsidered based on his advice, before filing his motion to withdraw.

Halvorson conceded at the hearing on his motion to withdraw that Jones may have reconsidered and decided not to testify falsely. Thus, the record before us contains only an alleged possible intent to commit perjury. It does not support Halvorson's contention that his continued representation of Jones would result in a violation of the rules of professional conduct or other law and, as a result, it also does not support his motion to withdraw under Rule 1.16(a)(1), MRPC.

Rule 1.16(b)(1), MRPC, on which Halvorson also based his motion, permits an attorney to withdraw if the client persists in a course of conduct the lawyer reasonably believes is criminal or fraudulent. Webster's Ninth New College Dictionary (1988) defines "persist" as "to go on resolutely or stubbornly in spite of opposition, importunity, or warning." Here, nothing of record indicates that Jones was "persisting" in his alleged intent to testify falsely after considering Halvorson's advice and warning. The record before us does not support withdrawal based on Rule 1.16(b)(1), MRPC.

In this regard, Jones and the amici curiae urge our adoption of a variety of standards of knowledge which an attorney should be required to possess prior to moving to withdraw based on a criminal defendant client's intent to commit perjury. Jones contends that a "firm factual basis" must exist. The Criminal Defense Section of the State Bar of Montana asserts that counsel must be "absolutely convinced in his own mind, and in fact beyond a reasonable doubt" that the client will commit perjury before moving to withdraw. The State Bar of Montana Ethics Committee recommends that counsel must "know" that the defendant intends to perjure himself or herself and that a maintained and reiterated statement of intent to do so should be sufficient.

We decline to adopt a particular knowledge standard in this case where no findings of fact have been made by the trial court. Moreover, it is unnecessary to do so in this case because it is clear that Halvorson did not meet any standard of knowledge prior

7

to moving to withdraw. Because the record does not support any persistence by Jones in the alleged intent to commit perjury it follows that Halvorson could not, in the language of Rule 1.16(b)(1), MRPC, reasonably believe that Jones was persisting in a course of action involving Halvorson's services which was criminal or fraudulent.

Halvorson also relied on Nix v. Whiteside (1986), 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123, in support of his motion to withdraw as Jones' counsel because of Jones' alleged intent to commit perjury. In Nix, the defendant was charged with murder, but claimed that he had stabbed the victim in self-defense. Nix, 475 U.S. at 160. He told his attorney that the victim "'was pulling a pistol from underneath the pillow on the bed[,]'" but admitted that he had not actually seen a gun. Nix, 475 U.S. at 160. During trial preparation, however, the defendant told his attorney for the first time that he had seen something "metallic" in the victim's hand; his explanation for the change was that "[i]f I don't say I saw a gun, I'm dead." The attorney explained that it was not necessary to prove the victim actually had a gun to succeed on a claim of self-defense, but the defendant continued to insist on testifying falsely. Nix, 475 U.S. at 161. The attorney advised that he would not allow the defendant to testify falsely and that, if the defendant did so, he would be required to advise the court that the defendant was committing perjury and would move to withdraw as counsel. Nix, 475 U.S. at 161.

The defendant testified at trial that he "knew" the victim had

a gun, but conceded on cross-examination that he did not actually see a gun in the victim's hand. Nix, 475 U.S. at 161-62. He was convicted of second-degree murder and subsequently moved for a new trial, claiming that he had been deprived of a fair trial due to his attorney's admonitions not to testify that he saw something metallic in the victim's hand. Nix, 475 U.S. at 162. The trial court denied the motion and the Iowa Supreme Court affirmed, holding that neither the right to counsel nor the attorney's duty to his client extended to assisting the client in committing perjury. Nix, 475 U.S. at 162.

The defendant filed a federal habeas corpus petition alleging, among other things, that he had been denied effective assistance of counsel by his attorney's refusing to allow him to give perjured testimony. Nix, 475 U.S. at 162. The issue before the United States Supreme Court was whether the Sixth Amendment right to counsel is violated when an attorney refuses to cooperate with a criminal defendant in presenting perjured testimony. Nix, 475 U.S. at 159.

The Supreme Court observed that the first part of the Strickland test requires a defendant to establish "constitutionally deficient" performance by counsel. Nix, 475 U.S. at 164-65. Having recognized counsel's duty of loyalty in Strickland, the Nix Court determined "that duty is limited to **legitimate,** lawful conduct compatible with the very nature of a trial as a search for truth." Nix, 475 U.S. at 166. While an attorney's duty of confidentiality and loyalty extends to a client's admission of

guilt, it does not require the attorney to assist the client in presenting false evidence. Nix, 475 U.S. at 166, 174. Thus, whether the attorney's conduct in Nix was seen as a successful attempt to persuade the defendant not to commit perjury, or as a threat to withdraw and disclose the defendant's perjury if and when it occurred, the Supreme Court held that the attorney's representation of the defendant fell "well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under Strickland." Nix, 475 U.S. at 171.

In reaching its conclusion in Nix, the Supreme Court surveyed and set forth various rules of professional conduct and interpretations of such rules. For example, the Supreme Court stated that it is "universally agreed" that an attorney's first duty when confronted with a client's stated intention to testify falsely is to attempt to dissuade the client from the unlawful course of conduct. Nix, 475 U.S. at 169. Moreover, where the client actually gives perjured testimony, an attorney may reveal the perjury to the trial court. Nix, 475 U.S. at 170. In addition, withdrawal may be appropriate where a client states an intent to testify falsely. Nix, 475 U.S. at 170. The Supreme Court was careful to note, however, that it was not intruding into the proper authority of the states to define and apply standards of professional conduct applicable to those admitted to practice in state courts. Nix, 475 U.S. at 165. Indeed, as pointed out by Justice Brennan in his concurring opinion, "the Court's essay

10

regarding what constitutes the correct response to a criminal client's suggestion that he will perjure himself is pure discourse without force of law." Nix, 475 U.S. at 177 (Brennan, J., concurring).

Neither the facts nor the holding in Nix support Halvorson's motion to withdraw based on Jones' alleged intent to testify falsely in this case. The only pertinent facts in Nix were the attorney's advice, in response to the client's stated intent to commit perjury, that he would not allow the client to testify falsely and, if the client did so, he would disclose the perjury to the trial court and move to withdraw; the client did not commit perjury. Here, in response to Jones' alleged intent to testify falsely, Halvorson advised of the potential consequences. To this extent, Halvorson's actions mirrored those of counsel in Nix. Halvorson, however, followed his advice by moving to withdraw and making disclosures to the District Court of client confidences. These significant facts were not present in Nix.

Moreover, the holding in Nix on the Sixth Amendment issue presented by the facts referenced above is that counsel's advice to his client about the potential consequences of the client's intent to commit perjury did not fall outside the range of reasonable professional conduct required by Strickland. See Nix, 475 U.S. at 171. The case now before us does not involve the propriety or constitutionality of Halvorson's advice to Jones; rather, it involves, initially, the propriety of Halvorson's actions thereafter in moving to withdraw from further representation of

11

Jones. In this regard and based on the record before us in this case, we concluded above that neither subsection (a)(1) nor subsection (b)(1) of Rule 1.16, MRPC, authorized Halvorson's motion to withdraw.

Furthermore, while we agree with the Supreme Court that an attorney's "universally accepted" initial duty when faced with a client stating an intent to commit perjury is to attempt to dissuade the client from doing so (see Nix, 475 U.S. at 169), we also agree with Justice Brennan that the Supreme Court's extensive survey and discussion regarding standards of professional conduct under various rules and commentaries is, for the most part, dicta and without force of law. See Nix, 475 U.S. at 177 (Brennan, J., concurring). In the Nix context, that survey and discussion is background material which bears little relationship to the facts and actual issue in that case. It is neither binding, nor necessarily persuasive, authority to this Court regarding the Montana Rules of Professional Conduct and our interpretation of those Rules vis-a-vis regulating the conduct of attorneys in the courts of Montana.

As a final argument relating to Halvorson's motion to withdraw based on Jones' alleged intent to commit perjury, the State contends that the disclosures Halvorson made to the District Court in this regard were required by Rule 3.3(a)(2), MRPC. Rule 3.3, MRPC, provides, in pertinent part:

(a) A lawyer shall not knowingly:
. .
(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or

12

fraudulent act by the client. . .

The State asserts that Halvorson knew Jones intended to commit perjury and, as a result, that Rule 3.3(a)(2) imposed an obligation to disclose Jones' intent to testify falsely to the District Court in order to avoid assisting Jones in the criminal or fraudulent act of perjury. However, as discussed above, Halvorson did not know Jones' intent in this regard. Therefore, Rule 3.3 does not support Halvorson's disclosure of Jones' alleged possible intent to commit perjury.

We conclude, on the record before us, that Halvorson's motion to withdraw was improper under Rules 1.16(a)(1) and (b)(1), MRPC, and was not supported by Nix.

## CONFLICT OF INTEREST

An attorney who abandons his or her duty of loyalty may create a conflict of interest. Frazer, 18 F.3d at 782. A defense attorney who essentially joins the prosecution's efforts in obtaining a conviction and acts on a belief that the defendant should be convicted "suffers from an obvious conflict of interest." Fraser, 18 F.3d at 782 (citation omitted). Such an attorney "'fail[s] to function in any meaningful sense as the Government's adversary."' Frazer, 18 F.3d at 782 (quoting United States v. Swanson (9th Cir. 1991), 943 F.2d 1070, 1074)

> While defense counsel in a criminal case assumes a dual
> role as a "zealous advocate" and as an "officer of the
> court," neither role would countenance disclosure to the
> Court of counsel's private conjectures about the guilt or
> innocence of his client. It is the role of the judge or
> jury to determine the facts, not that of the attorney.

13

United States ex rel. Wilcox v. Johnson (3rd Cir. 1977), 555 F.2d 115, 122. Where an attorney wilfully discloses confidential information communicated by his client, he inhibits mutual trust necessary for effective representation. Wilcox, 555 F.2d at 122.

Here, the record clearly establishes that Halvorson put his personal interest in not wanting to take Jones' case to trial ahead of Jones' constitutional right to an attorney devoted solely to Jones' interest in exercising his right to a trial by jury. Halvorson informed the District Court that he had negotiated a favorable plea agreement for Jones and indicated that he considered Jones' decision to decline the agreement and exercise his right to trial repugnant. In the course of further explaining Jones' "repugnant" decision, Halvorson reminded the court of the pending felony assault charge, premised on the State's allegation that Jones committed the assault by striking Sowers "with either a beer bottle, or a glass, or some glass object[,]" and disclosed a confidential admission Jones made to him that Jones "punched [Sowers] with a bottle of beer in [Jones'] right hand."

This disclosure was improper. As discussed above, Rule 1.6, MRPC, expressly prohibits the disclosure of information relating to the representation without the client's consent except in specified circumstances where the duty to disclose necessarily overrides the duty of confidentiability and loyalty. Rule 3.3(a) (2), MRPC, provides an additional duty to disclose under carefully limited circumstances, even when compliance would reveal information otherwise protected by Rule 1.6, MRPC. The circumstances contained

14

in Rule 3.3(a)(2), MRPC, relate to disclosure necessary to avoid assisting in a client's criminal or fraudulent act, however, and bear no relationship to Halvorson's extensive disclosure in this case regarding his "repugnance" to taking Jones' case to trial.

Moreover, Halvorson's contention that Jones' "repugnant" decision to exercise his right to a jury trial, rather than accept a plea agreement, constitutes good cause for withdrawal runs directly afoul of Rule 1.2(a), MRPC, which provides in relevant part:

> In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

The obligations imposed by this Rule are paramount, and unqualified. Thus, while Halvorson may not have agreed with Jones' decision to decline a plea agreement and exercise his right to a jury trial, that decision did not--and cannot--constitute cause for withdrawal.

Halvorson also indicated that, in his opinion, on an "open and shut basis . . there is guilt and is the plea [sic] that probably should be entered." To illustrate his point, Halvorson detailed for the District Court and the prosecution why he believed Jones was so clearly guilty. He laid out the facts leading up to the alleged assault, which involved Sowers physically removing Jones from a bar and, immediately thereafter, walking into the bar covered with blood. He then stated:

> Now, on probabilities, who else would have done it? [Jones] just had this physical disagreement with [Sowers] .

15

. . .

There is no other person that the State has ever
suspected, and there's no other person that [Jones] has
indicated should be a suspect, and there's no other
person that any witness I know of has indicated should be
a suspect. So, you know, the range of possible
explanations . . is narrow. It would be like threading
a needle to come up with any other explanation.

.

In my mind, under the study of Montana law, there's no
doubt but what that [sic] beer bottle is a weapon, and,
even if it weren't, there's no doubt in my mind that the
degree of injury . is serious bodily injury.


It's a felony assault, and my client has admitted to me,
essentially, that he did it.

Halvorson's narrative detailed for the District Court and the

prosecution why he believed Jones was guilty of felony assault and

should not go to trial. The State cites to no authority, and we

have found none, supporting disclosure by a defense attorney of a

client's confidential admission of guilt and detailing for the

court and the prosecution the reasons his client is guilty in

support of a motion to withdraw from further representation.

The record before us establishes that, at the hearing on

Halvorson's motion to withdraw, Halvorson totally abandoned his

adversarial role on Jones' behalf against the State, essentially

joining the prosecution's efforts in obtaining a conviction. In

acting on his own belief that Jones should be convicted and in

essentially joining the State's efforts in obtaining a conviction,

we conclude that Halvorson created "an obvious conflict of

interest" and abandoned his duty of loyalty to Jones. See Fraser,

16

18 F.3d at 782.

Ordinarily, a criminal defendant's constitutional right to the effective assistance of counsel is violated only when counsel's performance was deficient and the deficient performance prejudiced the defendant's right to a fair trial, and the defendant must establish both elements. Strickland, 466 U.S. at 687. The Strickland Court noted the availability of "presumed prejudice," however, in situations where counsel is "burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." Strickland, 466 U.S. at 692. Similarly, the Ninth Circuit Court of Appeals has recognized an exceptional situation regarding the prejudice requirement where an egregious actual conflict of interest exists of record between the client's interests and the attorney's sympathies. See Frazer, 18 F.3d at 782-83.

In Frazer, the Ninth Circuit addressed a defendant's allegations that his appointed counsel had called him a "stupid nigger son of a bitch and said he hopes I get life[;]" the conversation allegedly was overheard by others and the defendant attempted without success to have a different lawyer appointed. Fraser, 18 F.3d at 780. He subsequently filed a pro se motion for relief from the sentence imposed, alleging that the treatment he received from counsel was so fatally defective as to constitute an abandonment of the attorney's duty of loyalty. Without holding an evidentiary hearing, the magistrate judge dismissed Frazer's assertions as mere conclusory allegations and, in any event,

17

to his interest in exercising his right to trial. The conflict between Halvorson's sympathies and Jones' rights and interests is unmistakable and egregious and, under such circumstances, Halvorson can be said to have represented Jones only "'through a tenuous and unacceptable legal fiction."' See Frazer, 18 F.3d at 782-83 (citation omitted). We conclude that this case constitutes the very rare instance in which a presumption of prejudice is warranted.

We will continue to require strict compliance with the prejudice prong of Strickland in ordinary ineffective assistance cases involving allegations of deficient performance by counsel. In that regard, our deference to counsel's tactical and strategic decisions will continue unabated. Given this record, however, we refuse to indulge in nice calculations regarding the amount of prejudice attributable to the clear and unequivocal conflict of interest Halvorson created.

We hold that, faced with Halvorson's clear conflict of interest and abandonment of his duty of loyalty to Jones, the District Court abused its discretion in denying Halvorson's motion to withdraw as Jones' counsel. We vacate Jones' conviction and sentence and remand this case to the District Court for a new trial.

_____
Justice

19

determined that Frazer was not prejudiced because counsel's actual performance was not demonstrably erroneous. Frazer, 18 F.3d at 780.

The issue on appeal in Frazer was whether the trial court abused its discretion in failing to hold an evidentiary hearing on whether the defendant's Sixth Amendment right to counsel was violated. The Ninth Circuit held that

> the facts as alleged in this case, if proved, would render so defective the relationship inherent in the right to trial counsel guaranteed by the Sixth Amendment that Mr. Frazer would be entitled to a new trial with a different attorney.

Frazer, 18 F.3d at 784. According to the Ninth Circuit, the defect, if proved, would be so egregious that a presumption of prejudice would be appropriate without review of the attorney's actual conduct at the trial. Frazer, 18 F.3d at 785 (citing United States v. Cronic (1984), 466 U.S. 648, 660, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668).

Notwithstanding the differences in procedural context and bases for abandonment of the duty of loyalty between Frazer and the case before us, we adopt and apply the Frazer rationale here. Our duty as judges is "to ensure that the right to counsel, as a jurisdictional prerequisite to depriving a person of his or her liberty, is fully honored." Frazer, 18 F.3d at 784. The record before us in this case is clear. Halvorson totally abandoned his duties of loyalty and confidentiality to Jones by putting his personal interest in not wanting to take Jones' case to trial ahead of Jones' interest in representation by an attorney devoted solely

18

We concur:

_____
Chief Justice

_____

_____

_____
W. William Burphant

_____
William E. Hewitt
Justices

September 11, 1996

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William F. Hooks, Esq.
Appellate Defender
Box 200145
Helena, MT 59620-0145

Hon. Joseph P. Mazurek, Attorney General
Cregg Coughlin, Assistant Attorney General
215 N. Sanders
Helena MT 59620

Mike Weber, County Attorney
201 West Main
Sidney MT 59270

Gary Ryder
Attorney at Law
P.O. Box 72
Hysham, MT 59038

Keith A. Maristuen, Chair
State Bar of Montana Ethics Committee
P.O. Box 7152
Havre, MT 59501

David F. Ness, Chairperson
Criminal Defense Section of the State Bar
P.O. Box 8358
Missoula, MT 59807-8358

Michael Donahoe
Attorney At Law
Box 258
Helena MT 59624-0258

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy