FILED

01/02/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0704

DA 15-0704

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 2

CITY OF LIBBY,

      Plaintiff and Appellee,

    v.

SHAYNA HUBBARD,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 15-28
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Chief Appellate Defender, Danny Tenenbaum, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General; Helena, Montana

          Dean D. Chisholm, Libby City Attorney; Libby, Montana

Submitted on Briefs:  November 1, 2017

Decided:  January 2, 2018

Filed:

_____

                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Shayna Hubbard (Hubbard) appeals from the judgment entered by the Nineteenth Judicial District Court, Lincoln County, convicting her of driving with a suspended license under § 61-5-212, MCA, and failing to show proof of liability insurance under § 61-6-302, MCA. We affirm, addressing the following issue:

*Should Hubbard's convictions be reversed because of ineffective assistance of counsel?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On November 8, 2014, Hubbard, an Oregon resident, and her cousin, Olivia Schultz (Schultz), went to the Lucky Logger Casino in Libby to gamble. Hubbard was 19 years old and could legally gamble, but only patrons who were 21 years old and older were eligible to receive a gambling coupon, so she provided another person's identification to a casino employee to get the coupon. An employee who recognized Hubbard and knew she was using another person's identification called the police.

¶3 Officers John Powell and Brad Dodson went to the casino to investigate. Officer Powell approached Hubbard and asked if she had used another person's identification and Hubbard confirmed she had. Officer Powell asked for her identification, and she gave him both her own driver's license from Oregon and the other person's identification she had used. Officer Powell confirmed that Hubbard had no outstanding warrants, but learned that Hubbard's Oregon driver's license was suspended. Officer Powell informed Hubbard that it is illegal to use another person's identification, but decided not to cite her for the offense. The officers then left the casino.

2

¶4    Officer Powell got back into his vehicle and resumed his patrol, and a short while later, observed Hubbard driving. He initiated a traffic stop because he knew her license was suspended. Powell verified through dispatch that Hubbard's license was suspended. Hubbard was also unable to provide proof of insurance. Officer Powell arrested Hubbard and cited her with driving with a suspended license and failing to provide proof of insurance.

¶5    On November 12, Hubbard appeared in Libby City Court, pled not guilty to the charges, and asked for appointment of a public defender. Attorney S. Charles Sprinkle (Counsel) was appointed for the city court trial. On April 9, 2015, Hubbard was tried *in absentia* in a bench trial in Libby City Court and was convicted on both counts. Counsel filed a Notice of Appeal, asking for a trial *de novo*. A jury trial in district court was scheduled for later that year. Counsel and Hubbard conversed by email, wherein Hubbard explained her belief that Officer Powell had entrapped her by allegedly telling her to drive from the casino, with knowledge her license was suspended, because her companion, Schultz, had been drinking. Counsel thereafter filed an Omnibus Hearing Memorandum in which he "reserve[d] the right to introduce evidence of entrapment as a defense[.]"

¶6    On July 31, Counsel moved to withdraw from Hubbard's representation, citing § 46-8-103, MCA, and arguing that a new trial in District Court "would be frivolous or wholly without merit." Counsel filed a supporting memorandum and attached several documents, including the email Hubbard had sent to him explaining why she believed she

was entrapped. Counsel argued the entrapment defense would be frivolous, and the problem with a mental state defense would be:

> The fact that it was obvious that [Hubbard] had to have driven to the location (Lucky Logger Casino) in total disregard of the fact that her license was suspended before she was even investigated for using a phony ID, told to leave the premises, and ultimately stopped for Driving While Suspended. In other words, Shayna Hubbard had a predilection to commit the crime of Driving While Suspended before she even arrived at the Lucky Logger Casino. This disregard of the status of her Driver's License continued until she was pulled over by Officer Powell.

The District Court denied Counsel's motion to withdraw, noting it was effectively an *Anders* brief,[1] and explained that Counsel was not required to present the entrapment defense if it was frivolous.

¶7 The prosecution filed a motion in limine to exclude evidence of entrapment and used Counsel's memorandum to support their position. Counsel responded, arguing the court should only grant the motion in limine if it concludes the defense does not apply. The court denied the prosecution's motion, reasoning that "[i]f the Defendant were to testify that an officer told her that it would be proper for her to drive even though she had a suspended license, but then arrested her once she commenced driving, then the question could be submitted to the jury." In September, before trial, the Office of the State Public Defender (OPD) removed Counsel and reassigned Hubbard's case to another attorney "due to a

---

[1] The process for withdrawal outlined in *Anders v. California*, 386 U.S. 738 (1967) is mirrored in § 46-8-103(2), MCA, which requires defense counsel who finds a case wholly frivolous to ". . . file a motion with the court requesting permission to withdraw" wherein it "attest[s] that counsel has concluded that an appeal would be frivolous . . . after reviewing the entire record and researching applicable statutes, case law, and rules and that the defendant has been advised of counsel's decision and of the defendant's right to file a response." The motion must be "accompanied by a memorandum discussing any issues that arguably support an appeal."

4

conflict" with Counsel that caused an "irretrievable break-down in the attorney-client relationship."

¶8 Trial was held on October 23, 2015. Hubbard testified she had been visiting from Portland and staying with her father in Libby. She stated that Schultz drove from Kalispell to Libby to see Hubbard. Hubbard testified Schultz drove Hubbard's father's car to the casino. She also testified that, at the casino, Officer Powell told her and Schultz to leave the premises, and recommended that Hubbard drive because Schultz had been drinking. Hubbard testified she drove toward Town Pump intending to pick up food, but en route, was pulled over by Officer Powell. Hubbard stated that she did not know that her license was suspended until Officer Powell stopped her vehicle. On cross-examination, the prosecutor asked Hubbard where she was living and she responded, "Portland, Oregon." The prosecutor then asked, "And then how did you get to Libby?" and Hubbard responded, "I drove." The prosecutor asked, "Was your driver's license suspended when you drove from Portland to Libby?" and she replied, "Apparently it was." Schultz' testimony mirrored Hubbard's, adding that, at the traffic stop, Officer Powell left her with Hubbard's vehicle and she drove it home, despite the fact she had been drinking.

¶9 Officer Powell testified that he neither asked Hubbard and Schultz to leave the casino nor told Hubbard to drive. He testified he confiscated the identification Hubbard used illegally at the casino and, at the traffic stop, ensured Schultz had a driver's license before allowing her to take the car. He stated he would not have allowed Schultz to take the car if he believed she was under the influence of alcohol. Officer Dodson concurred

5

that Officer Powell neither told Hubbard and Schultz to leave the casino nor told either one of them to drive.

¶10     The District Court instructed the jury: "if before contact with law enforcement, Shanya Hubbard [had] an intent or disposition to commit the crime charged, then she was not entrapped, even though an officer provided a favorable opportunity to commit the crime or made committing the crime easier or even participated in acts essential to the crime."[2] The jury found Hubbard was not entrapped and found her guilty of both offenses.

¶11     Hubbard appeals.

## STANDARD OF REVIEW

¶12     Claims of ineffective assistance of counsel are questions of law and fact which this Court reviews de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

## DISCUSSION

¶13     *Should Hubbard's convictions be reversed because of ineffective assistance of counsel?*

¶14     The Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants the right to effective assistance of counsel.   Generally, to establish ineffectiveness, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and

---

[2] *See also* § 45-2-213, MCA ("[a] person is not guilty of an offense if the person's conduct is incited or induced by a public servant or a public servant's agent for the purpose of obtaining evidence for the prosecution of the person.  However, this section is inapplicable if a public servant or a public servant's agent merely affords to the person the opportunity or facility for committing an offense in furtherance of criminal purpose that the person has originated.").

(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2065, 2068 (1984).

¶15    Hubbard argues, and the State does not contest, that Counsel violated his duties of loyalty and confidentiality to her. Counsel supported his motion to withdraw with an email he received from Hubbard explaining her view on trial strategy, which is protected client information, and described her defense as frivolous. The right to counsel contemplates the assistance of an attorney devoted "solely to the interests of his client." *Von Moltke v. Gillies*, 332 U.S. 708, 725-26, 68 S. Ct. 316, 324 (1948). An attorney's duty of loyalty is "perhaps the most basic of counsel's duties." *State v. Jones*, 278 Mont. 121, 125, 923 P.2d 560, 563 (1996) (*citing Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067). An attorney also owes a duty of confidentiality to clients. *See* M. R. Pro. Cond. 1.6. ". . . [A] defense attorney's disclosure of confidential information in violation of Rule 1.6, MRPC, necessarily implicates the attorney's duty of loyalty as well as the defendant's constitutional right to effective assistance of counsel." *Jones*, 278 Mont. at 125, 923 P.2d at 563. Counsel's disclosure here violated his duties of loyalty and confidentiality, and fell below an objective standard of reasonableness, establishing the first prong of the *Strickland* analysis.[3]

---

[3] We have admonished appellate counsel, who file an *Anders* motion to withdraw, that counsel's "brief must not argue against his client, but must discuss any issues which would arguably support an appeal." *McClanahan v. State*, No. OP 07-0207, Or. (Mont., Apr. 18, 2007). The same practice should be honored when moving to withdraw in the trial court.

7

¶16 Hubbard broadly argues that her counsel "completely abandon[ed] his duty" and had a conflict of interest, requiring prejudice to be presumed under *Strickland* and *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), commonly known as the "*Cronic* exception" or "*Cronic* error."[4] *United States v. Roy*, 855 F.3d 1133, 1144 (11th Cir. 2017). Such cases involve attorney conduct that is so "egregiously prejudicial that ineffective assistance of counsel will be presumed." *Frazer v. United States*, 18 F.3d 778, 785 (9th Cir. 1994) (citation omitted). This exception is "narrow," *Florida v. Nixon*, 543 U.S. 175, 190, 125 S. Ct. 551, 562 (2004), and requires that "the attorney's failure to test the prosecutor's case . . . must be complete." *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 1851 (2002); *accord Riggs v. State*, 2011 MT 239, ¶ 13, 362 Mont. 140, 264 P.3d 693; *State v. Peart*, 2012 MT 274, ¶ 24, 367 Mont. 153, 290 P.3d 706 (noting *Cronic* analysis is confined to "extremely limited situations."). "In the wake of *Bell*, courts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007), *opinion amended by* 223 Fed. Appx. 489 (7th Cir. 2007) (per curiam); *see also Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997); (noting that attorney error, even when egregious, almost always requires analysis under the *Strickland* test).

---

[4] Hubbard briefly states that an "actual conflict of interest" was here demonstrated, but does not present a developed actual conflict argument. In such cases, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067 (citation omitted). We do not separately address this contention.

¶17    In *Jones,* we held that prejudice was presumed where defense counsel moved to withdraw and made statements violating his duty of loyalty and confidentiality, but then continued to represent the defendant at trial when his motion was denied. *Jones*, 278 Mont. at 134, 923 P.2d at 568. In *State v. Bekemans*, 2013 MT 11, ¶ 34, 368 Mont. 235, 293 P.3d 843, we contrasted *Jones* and concluded prejudice should *not* be presumed when counsel violates the duty of loyalty or confidentiality pretrial, but new counsel is appointed before trial, explaining that:

> the prejudice that the defendant presumptively suffered in *Jones* was not that the judge heard counsel's remarks, but that the same attorney who abandoned him continued to serve as counsel throughout his trial.

*Bekemans*, ¶ 34. Because the defect was cured, prejudice was not presumed, and Bekemans was required to prove actual prejudice in support of his ineffectiveness claim. *Bekemans*, ¶ 34.

¶18    Hubbard argues that, as in *Jones*, counsel completely abandoned her and violated his duty of loyalty by revealing confidential information, which constituted *Cronic* error and a presumption of prejudice. However, OPD, recognizing a conflict between counsel and Hubbard had arisen that caused an "irretrievable breakdown" of the attorney/client relationship, substituted another attorney to represent Hubbard. Unlike in *Jones,* where the "same attorney who abandoned [the client] continued to serve as counsel throughout his trial[,]" new counsel was assigned to Hubbard for the remainder of the proceeding. *Bekemans*, ¶ 34; *see also Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991) (noting that the remedy for "a conflict of interest, an irreconcilable conflict, or a complete

9

breakdown of communication between the attorney and the defendant" is "substitution of counsel."). We find no indication in the record, nor does Hubbard argue, that subsequent counsel also "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659, 104 S. Ct. at 2047. Thus, as in *Bekemans*, trial counsel's errors, while violating his duties of confidentiality and loyalty, did not result in complete abandonment of Hubbard, because she was provided substitute counsel for trial. Therefore, the *Cronic* exception—which requires "the attorney's failure to test the prosecutor's case" to be "complete," *Bell*, 535 U.S. at 697, 122 S. Ct. at 1851—does not apply here, and Hubbard must demonstrate actual prejudice. *Bekemans*, ¶ 34; *see also United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir. 1991) (a showing of actual prejudice under the second prong of *Strickland* is required when the "fundamental fairness of the challenged proceeding has not been affected" and "the integrity of the legal process has not been jeopardized.").

¶19 Under *Strickland*'s prejudice prong, the reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, "is a probability sufficient to undermine confidence in the outcome." *Robinson v. State*, 2010 MT 108, ¶ 12, 356 Mont. 282, 232 P.3d 403 (*citing Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). The prejudice inquiry focuses on whether counsel's deficient performance renders the trial result unreliable or the proceedings fundamentally unfair. *Riggs*, ¶ 12 (citation omitted).

10

¶20 Hubbard argues that her counsel revealed inculpatory information that was not previously in the city court record, which the prosecution used to file a motion in limine to prevent the entrapment defense. She also argues the improperly disclosed information prejudiced her during trial, because it gave the prosecution the idea to inquire into where she lived and how she arrived in Libby, prior to the incident at the casino.

¶21 Although the prosecution filed a motion in limine seeking to exclude entrapment evidence, the District Court denied the motion and, further, gave an instruction regarding the entrapment defense to the jury. Hubbard presented an entrapment defense and the jury considered whether entrapment applied. Thus, Hubbard's counsel's disclosure did not prejudice her ability to present an entrapment defense or undermine the outcome of the proceeding.

¶22 Counsel's improper disclosure to the prosecution included the statement that "it was obvious that [Hubbard] had to have driven to the location (Lucky Logger Casino) in total disregard of the fact that her license was suspended before she was even investigated[.]" Hubbard argues the prosecution premised its case on this disclosure. However, contrary to Counsel's statement, both Hubbard and Schultz testified at trial that Schultz, not Hubbard, drove to the casino on the night in question. The prosecution did not contest this point, and did not argue that Hubbard had driven that night. Similarly, Hubbard surmises that Counsel's disclosure prejudiced her by giving the prosecution the idea to inquire about how she got to Montana from Oregon, but the record indicates otherwise. First, Counsel's improper disclosure did not reference Hubbard's travel from Oregon to Montana. Further,

11

through discovery, the prosecution already had learned that Hubbard lived in Oregon and had driven a vehicle registered in Oregon. It was entirely reasonable that the prosecution, in proving a case of driving with a suspended license—and in proving a disposition to drive to defeat the entrapment defense—would inquire how Hubbard got to Montana in an Oregon-licensed vehicle. The State's argument on appeal, that Hubbard's conviction was not premised upon "any evidence that was improperly divulged by [counsel]," is correct.

¶23   We conclude that Counsel's disclosure did not render the trial result "fundamentally unfair" or "unreliable." *See Riggs*, ¶ 12; *Robinson*, ¶ 12. Hubbard cannot show that there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶24   Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER


12