No. 98-595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 271

296 Mont. 465

989 P.2d 813

NICK LENIER WILSON,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office; Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Kim Christopher, Lake County Attorney; Mitchell A. Young,

Deputy County Attorney; Polson, Montana


Submitted on Briefs: May 13, 1998

Decided: November 5, 1999

Filed:


_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶ Petitioner Nick L. Wilson was convicted of burglary and felony theft in the District Court for the Twentieth Judicial District. Wilson later filed a pro se petition for postconviction relief alleging ineffective assistance of counsel. The District Court appointed the Montana Appellate Defender to represent Wilson. Wilson then moved for summary judgment. The District Court conducted a combined hearing to consider the summary judgment motion and the postconviction petition. The District Court granted Wilson's motion for summary judgment and concluded it had erred**

by denying him a hearing when he requested substitution of counsel, but denied his petition for postconviction relief on the basis that Wilson had received a fair trial. Wilson appeals the denial of his petition for postconviction relief. We reverse and remand for further proceedings consistent with this opinion.

¶ **The sole issue on appeal is:**

Did the District Court err when it based its decision on counsel's performance at trial, rather than whether Defendants' motion for substitution should have been granted?

FACTUAL BACKGROUND

¶ **Nick Wilson and Burton Pendleton were arrested January 21, 1995. Both men were charged with burglary and theft on February 16, 1995, and both were appointed the same public defender, Benjamin Anciaux.**

¶ **Anciaux testified that although he did not recall the dates, he interviewed both Wilson and Pendleton. Wilson testified that he first spoke with Anciaux by phone for five to ten minutes a day or two after the deputy sheriff told him the court had appointed Anciaux to represent him. The State dropped its charges against Pendleton and listed him as a potential witness against Wilson in its Information filed March 6, 1995.**

¶ Wilson met Anciaux in person for the first time shortly before Wilson's arraignment March 8, 1995. At the arraignment, without consulting Anciaux, Wilson complained that Anciaux had a conflict of interest because Anciaux represented both Wilson and Pendleton. Wilson requested a new lawyer. The county attorney instructed Wilson that he had dismissed the charges against Pendleton and that there was no longer a conflict of interest. Wilson said nothing further. Wilson testified that Anciaux said nothing on the record at the arraignment, but when Wilson finished speaking and sat down, Anciaux called him a "fucking idiot." Wilson testified that he was the only person in the courtroom to hear Anciaux's remark.

¶ On March 29, 1995 Anciaux met Wilson at the jail and presented him with a written plea proposal, which Wilson rejected. It included a recommended sentence of 30 years with 10 years suspended. Wilson told Anciaux that he would plead guilty to misdemeanors or accept a 10-year prison sentence. Wilson testified that Anciaux

then left the room and returned a short time later telling Wilson "no" to his counter offer. Anciaux testified that this was the only time he recalled discussing plea negotiations with Wilson, but that his notes indicated that he had discussed a plea agreement with Wilson on three occasions.

¶ Wilson completed three inmate special request forms asking to speak to Judge C. B. McNeil. His second request on April 19, 1995 was accompanied by a letter requesting a new lawyer. In the letter, Wilson complained that Anciaux was prejudiced against him and disinterested in his case. Specifically, Wilson claimed that Anciaux verbally insulted him at the arraignment and failed to deliver a copy of the case file, which Wilson had requested. Without the benefit of a hearing, Judge McNeil denied Wilson's request for a new lawyer and gave Wilson three options: hire his own lawyer, proceed pro se, or continue with Anciaux as his lawyer. Wilson continued with Anciaux.

¶ Wilson asserts that he lacked substantive contact with Anciaux and that Anciaux failed to keep him informed about the progress of his case. He contends that he and Anciaux had a breakdown in communication prior to trial. As a result, Wilson claims, he was denied effective assistance of counsel.

¶ The State responds that Wilson met with Anciaux several times and that Wilson and Anciaux communicated sufficiently well to present an adequate defense. The State also argues that Wilson's relationship with Anciaux did not prejudice Wilson at trial. The District Court agreed.

## ISSUE

¶ Did the District Court err when it based its decision on counsel's performance at trial, rather than whether Defendants' motion for substitution should have been granted?

## STANDARD OF REVIEW

¶ The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; *see also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer, Inc. v. Department of Revenue* (1990), 245

**Mont. 470, 474-75, 803 P.2d 601, 603-04.**

**¶ An indigent criminal defendant has a fundamental right to effective assistance of counsel guaranteed by the Sixth Amendment, the due process clause of the Fourteenth Amendment, and the Montana Constitution. U.S. Const. amend. VI;** *Powell v. State of Alabama* **(1932), 287 U.S. 45, 71, 53 S. Ct. 55, 65; Mont. Const. art. II, § 24 ("In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel . . . ."). The purpose of the right to counsel is to insure that the defendant receives a fair trial.** *Strickland v. Washington* **(1984), 466 U. S. 668, 685, 104 S. Ct. 2052, 2063. To insure the defendant a fair trial counsel must be effective.** *Strickland***, 466 U.S. at 686, 2052 S. Ct. at 2063. In** *Strickland***, the United States Supreme Court established a two-part test to determine when counsel is ineffective:**

First, the defendant must show that counsel's performance was *deficient*. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance *prejudiced* the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . .

466 U.S. at 687, 104 S. Ct. at 2064 (emphasis added). Generally, the defendant must establish both parts of the test to prevail. *State v. Jones* (1996) 278 Mont. 121, 133, 923 P.2d 560, 567. However, in some cases counsel's performance is so deficient a presumption of ineffectiveness arises and the second part of the test becomes unnecessary. *United States v. Cronic* (1884), 466 U.S. 648, 660, 104 S. Ct. 2039, 2047. "[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 661, 104 S. Ct. at 2048.

**¶ In this case, the District Court found that Wilson was not prejudiced by Anciaux's performance. The District Court applied the second part of the** *Strickland* **test, but failed to inquire into the possibility that Anciaux's performance raised a presumption of ineffectiveness.**

**¶ Specifically, the District Court concluded:**

3. That Wilson failed to raise seemingly substantial complaints about Anciaux's performance *as trial counsel*. Wilson's complaint that Anciaux did not like him is insufficient to establish a breakdown in communications sufficient to affect counsel's performance. Wilson's complaints about the frequency of his contact with Anciaux failed to establish any lack of diligence on Anciaux's part, and *Wilson was unable to describe how Anciaux could have established a better defense at trial.*

. . . .

8. That Wilson failed to show that, but for his attorney's performance, the outcome of the trial would have been different.

¶ **However, as stated in *Powell v. Alabama*, the pretrial period is critical:**

[D]uring perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.

287 U.S. at 56, 53 S. Ct. at 59-60.

¶ **For example, Wilson had a right not only to effective representation at trial; he had a right to meaningful representation during plea bargaining. In this case, the State offered a 30-year sentence with 10 suspended. Wilson rejected that offer and was ultimately sentenced to 50 years with 10 suspended–twice the actual time. Anciaux testified that Wilson's chances at trial were "slim to none." However, there is no evidence that he communicated that fact to Wilson prior to his rejection of the State's offer.**

¶ **While a presumption of ineffectiveness can arise under other circumstances, in the context of this case, the presumption could have arisen: (1) by an actual conflict of**

interest or (2) by an irreconcilable conflict. *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998); *see also Jones,* 278 Mont. at 133, 923 P.2d at 568. In either case, once the presumption is established the defendant does not need to satisfy the second part of the *Strickland* test. *Moore,* 159 F.3d at 1158; *Frazer v. United States* (9th Cir. 1994), 18 F.3d 778, 785.

¶ **The analysis for an actual conflict was established in** *Moore***:**

To establish a Sixth Amendment violation, [the defendant] must show that an actual conflict of interest adversely affected his lawyer's performance. [The defendant] must prove actual conflict, not just a possibility of conflict, through a factual showing on the record. Once an actual conflict is shown, [the defendant] need demonstrate only that some effect on counsel's handling of a particular aspect of the trial was likely. Prejudice is presumed. If, however there is only a possibility of conflict, [the defendant] must meet the performance and prejudice standard of *Strickland v. Washington.*

*Moore,* 159 F.3d at 1157 (citations omitted).

¶ **To establish an irreconcilable conflict, the defendant must show a complete collapse of the attorney-client relationship.** *Moore,* **159 F.3d at 1158;** *citing Frazer***, 18 F.3d at 785 (a lawyer's calling his client a "stupid nigger son of a bitch" is irreconcilable with the duty of loyalty and the responsibility of providing meaningful assistance);** *see also Tucker v. Day***, 969 F.2d 155, 159 (5th Cir. 1992) (a lawyer who states "I am just standing in for this one" and says nothing at a sentencing hearing fails to provide effective assistance of counsel);** *United States v. Williams***, 594 F.2d 1258, 1260 (9th Cir. 1979) (the right to counsel is denied where the attorney-client relationship was so bad that defendant elected to proceed pro se). We have stated the rule as follows:**

If the trial court determines that the defendant and his counsel have a conflict so great that it results in a total lack of communication or if counsel is failing to render effective assistance, new counsel should be appointed. The burden of proof is on the defendant to come forward with material facts establishing total lack of communication or ineffective assistance of counsel, and bare unsupported allegations are insufficient to justify appointment of new counsel.

*Montana v. Zackuse* (1991), 250 Mont. 385, 385-86, 833 P.2d 142 (citations omitted); *see also State v. Albrect* (1990), 242 Mont. 403, 413, 791 P.2d 760, 766. In Montana, the right to counsel includes a right to a meaningful attorney-client relationship. *State v. Enright* (1988), 233 Mont. 225, 229, 758 P.2d 779, 782; *State v. Morrison* (1992), 257 Mont. 282, 285, 848 P.2d 514, 516; *State v. Finley* (1996), 276 Mont. 126, 142, 915 P.2d 208, 218.

¶ **While we have no case directly on point, we are persuaded that the correct approach under the circumstances presented in this case is the approach taken by the Court of Appeals of Utah in *State v. Vessey* (Utah. Ct. App. 1998), 967 P.2d 960.**

¶ **In *Vessey* the defendant filed a pro se motion for substitution of counsel based on an alleged conflict of interest and disagreements with his counsel. The motion was summarily denied. The defendant was convicted of a felony and appealed on the basis that the trial court erred by failing to investigate his request for substitution of counsel. The State conceded, as it does in this case, that the trial court erred by failing to conduct any meaningful inquiry into defendant's complaints about counsel, but contended, as the State does in this case, that the error was harmless because defendant had not shown that he received ineffective assistance of counsel at his subsequent trial. The Utah Court phrased the issue it was called upon to decide as follows:**

> [W]e must determine whether a trial court's failure to investigate a defendant's timely pretrial request for substitution of appointed counsel is reversible error without a showing of actual ineffective assistance by the attorney who remains in the case.

*Vessey*, 967 P.2d at 962.

The Utah Court observed that different jurisdictions approached the issue differently. It noted that:

> Other jurisdictions are divided on this issue. The first line of authority holds that a trial court's failure to inquire into a defendant's request for substitution of counsel is per se reversible error. The second position, however, holds that a trial court's failure to inquire into a defendant's substitution request is reversible error only if the defendant can show that he actually received ineffective assistance from his appointed counsel at trial.

*Vessey*, 967 P.2d at 962.

The Utah Court then adopted an approach between the two extremes which we feel is appropriate in this case. It held that:

> We prefer a middle ground, agreeing with the majority rule holding that a trial court's failure to investigate a defendant's timely substitution request is per se error, but eschewing actual reversal until an actual conflict is established between the defendant and counsel of a magnitude requiring substitution of counsel.

*Vessey*, 967. P.2d at 962-63.

The Utah Court explained that only a pretrial review of a defendant's demand for substitution of counsel suffices because only then is it unclouded by the possibility that defendant's claim is motivated simply by his conviction and pointed out that:

> Finally, without a per se rule no incentive exists for a trial court to conduct the appropriate review in a timely manner. We therefore remand this case to the trial court to hold an evidentiary hearing to determine if defendant's complaints about his appointed counsel justified the appointment of substitute counsel. If so, the trial court should grant defendant a new trial. However, if the court determines defendant's request for substitution of counsel was unfounded, the judgment of conviction would stand as entered.

*Vessey*, 967 P.2d at 964.

¶ **We hold, as we have in the past, that a district court's failure to investigate a defendant's timely substitution request is error; (*see State v. Gallagher*, 1998 MT 70, 955 P.2d 1371) and when the error is reviewed by postconviction relief or appeal, the issue is not whether defendant received effective assistance of counsel at a subsequent trial, but whether his conflict with counsel was sufficient that it required substitution of counsel at the time the request was made. Only by analyzing the District Court's error in that fashion is the importance of pretrial representation, particularly with regard to trial preparation, and effective plea negotiations, taken into consideration.**

¶ **In this case, we are unable to determine from the District Court's findings and**

conclusions whether it gave adequate consideration to the merits of Wilson's request for substitution of counsel based on the facts as they existed at the time the request was made or whether the District Court's denial of Wilson's petition for postconviction relief was based simply on the District Court's observation of Anciaux's performance at the time of trial. Therefore, we vacate the District Court's order which denied Wilson's petition for postconviction relief and remand this case to the District Court for further proceedings consistent with the standards set forth in this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART