No. 00-865

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 106

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

ARTHUR PAUL KASKE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Kristina Guest, Appellate Defender Office, Helena, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

        Fred Van Valkenberg, Missoula County Attorney, Missoula, Montana

        Karen S. Townsend, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  January 10, 2002

Decided:       May   21,   2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    The State of Montana charged Arthur Paul Kaske with criminal possession of dangerous drugs. A jury subsequently convicted Kaske of possession, but Kaske failed to appear at the sentencing hearing. The Fourth Judicial District Court, Missoula County, later granted a motion for a new trial and the State filed an Amended Information, adding a charge of bail jumping. Before the new trial, the District Court denied a request by Kaske to replace his lawyer. A jury found Kaske guilty of both possession and bail jumping. Kaske appeals the court's denial of his request for a new lawyer and the conviction of bail jumping. We affirm.

¶2    The following issues are dispositive of this appeal:

¶3    1. Did the State present sufficient evidence to prove that Kaske had been set at liberty by a court order upon the condition that he subsequently appear at a specific time?

¶4    2. Did the District Court err in not appointing Kaske substitute counsel?

BACKGROUND

¶5 On February 3, 1994, the State of Montana charged Kaske by Information with Felony Criminal Possession of Dangerous Drugs. A public defender, J. Dirk Beccarri, was assigned as Kaske's counsel. On April 19, 1994, Kaske appeared before the District Court and complained that Beccarri's representation dissatisfied him. The court ordered that Beccarri withdraw as counsel, and the public defender's office appointed William Boggs as Kaske's new counsel. A jury convicted Kaske on September 29, 1995. The District Court set sentencing for November 7, 1995.

¶6 On October 24, 1995, Boggs filed a motion for a new trial. After Kaske did not appear for the sentencing hearing on November 7, the court issued a bench warrant. On February 8, 1996, the court granted Boggs' motion for a new trial and set a status conference for August 13, 1996. Kaske failed to appear at either that status conference or the following one on February 4, 1997.

¶7 Authorities apparently arrested Kaske in New York on March 16, 1999, and extradited him to Montana. On December 21, 1999, the State filed an Amended Information, which added a charge of bail jumping. At the next hearing, on December 28, 1999, Kaske objected to Boggs' representation, stating that Boggs was neither making the proper effort on his behalf nor discussing certain details of the case with him. In addition, the State noted that it might call Boggs as a witness on the bail jumping charge. On these bases, the District Court relieved Boggs as Kaske's counsel and directed that another public defender be appointed to Kaske.

¶8    On January 4, 2000, the court continued Kaske's arraignment until January 18, 2000, because Kaske's new public defender, Margaret Borg, had not yet received Kaske's file from Boggs. A deputy public defender appeared at the January 18 hearing to explain that Borg still had not received Kaske's file. At that hearing, Kaske expressed concerns regarding Borg's representation. Kaske complained that Borg would not discuss certain topics that he thought were important and would not allow him to file documents without her permission. He also stated that Borg's "social agenda" and "anti-drug campaign" were interfering with her ability to defend him.

¶9    On February 1, 2000, Kaske again appeared in court, this time with Borg. He pled not guilty to the bail jumping charge and the court set an omnibus hearing for February 22, 2000. At the omnibus hearing, Kaske reiterated his displeasure with Borg's representation and asked the court to replace her with another public defender. Kaske complained that Borg was not pursuing exculpatory evidence, that he had not been supplied with depositions and that the Information was based on hearsay. He also complained that he could not afford to make copies of legal documents at the county jail, which interfered with his ability to work on a discovery motion he was developing. Kaske informed the court that he was also working on a motion to be co-counsel in his own defense.

¶10   Judge Henson told Kaske that he could either continue with his present counsel or have the court dismiss her and continue pro se.

4

Kaske expressed his wish to have the court replace Borg. Judge Henson responded that he would make an initial inquiry into the matter. He then directed Kaske to file his complaint against Borg with the court and noted that Borg would have a chance to respond.

¶11 On March 21, 2000, the court held a hearing regarding Kaske's complaint against Borg. At the time of the hearing, however, Kaske had not yet filed his complaint. He first explained that he did not realize he needed to make copies of his complaint. Later he complained that the detention facility would not allow him to make copies. Judge Henson told Kaske that he would still have to file a copy with the court if he wished to proceed with his claim of ineffective assistance of counsel. After the hearing, Kaske filed his complaint against Borg with the court.

¶12 During the same hearing, Kaske also asked to submit a petition for habeas corpus, but Judge Henson declined to accept it so long as Borg continued to represent him. Kaske then requested that he be provided with depositions supporting the Amended Information. The court responded that no depositions existed. It noted, however, that there was an affidavit that supported the motion to file the Amended Information.

¶13 Next, Kaske complained that his former counsel, Boggs, had made an extended effort to deny him access to documents. He also stated that Borg would not disclose exculpatory evidence to him. Borg responded that she did not believe that the evidence Kaske was asking for existed. Kaske repeated, however, that "there's exculpatory evidence out there that needs to be addressed."

¶14 At the court's request, the prosecutor explained that his office had a statutory and professional duty to disclose evidence to the defense. Therefore, the defense always had access to the State's evidence, including all exculpatory evidence. Kaske nevertheless insisted that the "District Attorney is trying to deny the Defense exculpatory evidence for the sake of developing a defense."

¶15 The court ordered complete and continuing discovery of all exculpatory evidence, but Kaske questioned whether he was "going to be denied that exculpatory evidence, because my counsel will not give me any documents." After further discussions, Borg explained that it was early in the process and more information was likely to come forward. Furthermore, she noted that part of her difficulty with Kaske's requests stemmed from their disagreements on what was relevant, pertinent or appropriate.

¶16 After a discussion with the court about whether there was going to be a separate trial, Kaske stated that he had "some pretrial motions that I would like to file sometime in the future pertaining to specific exculpatory defense." The court again noted that, so long as Borg represented Kaske, it would only accept motions that Borg filed. Kaske responded that, although he was unwilling to waive his right to counsel, he did not want Borg to represent him. Borg agreed to provide Kaske with any documents that existed but noted that "I cannot give him copies of something that he imagines or would like." Kaske maintained that the documents existed and that Borg had not given him "one iota of

6

documentation."

¶17 On April 11, 2000, the court held another hearing regarding Kaske's complaints against Borg, and Borg filed her response to Kaske's complaints with the court. At the hearing, the court explained that Montana law required it to conduct an initial inquiry, to consider the specific complaints along with counsel's explanations and then to reach a conclusion. Kaske then told the court that he had a petition for habeas corpus he wished to file, along with a Section 1983 civil action. He also asked for a continuance "until I get a response from the Court" and noted that "if things haven't come to a certain conclusion within the next 30 days, I would seriously consider waiving my right to counsel and go ahead and proceed pro se."

¶18 On April 27, 2000, the court ruled on Kaske's motion. It held that Borg's representation had been adequate and denied Kaske's motion for a new attorney. The court wrote that Kaske could choose to continue with Borg, hire outside counsel or proceed pro se.

¶19 At the next hearing, on May 9, 2000, Kaske chose to proceed pro se. He explained that, while he did not wish to waive his right to counsel, he would not allow Borg to represent him "as long as she's going to maintain the attitude that she has in the past." Kaske also noted that he was preparing a complaint for the Commission on Practice, had filed a petition for a writ of habeas corpus with this Court and had filed a Section 1983 civil action in federal court. He then asked for a "legal advisor," which the court declined to provide. Kaske disagreed with the court's

interpretation of the situation and said he would prefer that Judge Henson disqualify himself because of his bias, which he would also explain to the Commission on Practice. After proceeding with the omnibus hearing and setting forth a briefing schedule, the court again warned Kaske of the perils of proceeding pro se.

¶20 On May 16, 2000, Kaske repeated his desire to continue without Borg as his lawyer. The court then appointed Borg as stand-by counsel. Borg turned over the file to Kaske during a hearing on May 30, 2000, at which time the court also directed the clerk to provide Kaske a copy of the entire court file.

¶21 The court conducted a trial on August 2-3, 2000. A jury convicted Kaske on both counts. On September 27, 2000, Kaske filed a pro se Notice of Appeal. Kaske subsequently filed a motion with this Court requesting counsel and an extension of time. On January 30, 2001, we granted Kaske's request and appointed the Montana Appellate Defender Office to represent Kaske on this appeal.

ISSUE ONE

¶22 Did the State present sufficient evidence to prove that Kaske had been set at liberty by a court order upon the condition that he subsequently appear at a specific time?

¶23 A person commits bail-jumping "if, having been set at liberty by court order, with or without security, upon condition that he will subsequently appear at a specified time and place, he purposely fails without lawful excuse to appear at that time and place." Section 45-7-308, MCA (1995). Kaske maintains that the State provided no evidence that Kaske was set at liberty by a court

8

order, the first element of the offense of bail jumping. He further contends that the State did not present evidence that the court had placed any conditions of release specifying that Kaske appear at a specific time and place.

¶24 When reviewing the sufficiency of evidence presented to support a jury verdict, we must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7. During trial, the State called Loretta Amos, a clerk of the District Court, to testify regarding the bail-jumping charge. Amos was responsible for keeping the minutes of the District Court's September 29, 1995, hearing. During direct examination, the following exchange took place:

> Question: And were you the deputy clerk of court on [September 29, 1995] for Judge Henson?
> Answer: Yes, I was.
> Question: And on that particular day, was Mr. Kaske present in a court proceeding?
> Answer: Yes, he was.
> Question: And do the minutes reflect whether or not he was told to appear at another time and date about six weeks in the future?
> Answer: Yes, he was.
> Question: Would you tell us, please, what the minutes reflect of what time and date he was supposed to come back to court.
> Answer: On November 7th of that – of 1995 at 9 a.m.
> Question: Okay. And that particular direction was given by His Honor, Judge Henson, and Mr. Kaske was present at that time?
> Answer: Yes, ma'am.

¶25 A single witness' testimony is sufficient to prove a fact, and the State may use circumstantial evidence to prove any element of an offense. *See Merrick*, ¶ 13. "[T]he weight and

9

credibility of witnesses are exclusively the province of the trier of fact." *Merrick*, ¶ 13. Amos testified that the court ordered Kaske to appear in court on November 7, 1995. Therefore, contrary to Kaske's assertions, the State provided adequate evidence for the jury to conclude that the court directed Kaske to appear in court at a specific time and place.

¶26    Kaske maintains, however, that the court's order must have included a written statement setting forth any restrictions or conditions upon the defendant's release.  He bases this assertion on § 46-9-110, MCA (1994), which requires that release orders must include a written statement.  To obtain a conviction under a criminal statute, however, the State only needs to prove the elements of the offense as defined by the statute. *See State v. Heffner*, 1998 MT 181, ¶ 26, 290 Mont. 114, ¶ 26, 964 P.2d 736, ¶ 26.  The bail-jumping statute does not mention a release order.  It simply states that, to commit bail-jumping, a person must have "been set at liberty by court order."  Section 45-7-308, MCA (1995).  Furthermore, we have previously concluded that a party's failure to appear for an oral amendment to a notice to appear was sufficient to constitute bail-jumping. *See State v. Snaric* (1993), 262 Mont. 62, 67-68, 862 P.2d 1175, 1178-79.

¶27  The State presented evidence that the court ordered Kaske to appear before it on November 7, 1995.  Kaske failed to do so. Thus, Kaske failed to appear despite a court order.  Therefore, we conclude that the State presented sufficient evidence to prove every element of the offense of bail-jumping.

10

¶28 Did the District Court err in not appointing Kaske substitute counsel?

¶29 The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee indigent defendants effective assistance of counsel. *See State v. Gallagher* (*Gallagher I*), 1998 MT 70, ¶ 14, 288 Mont. 180, ¶ 14, 955 P.2d 1371, ¶ 14. If the relationship between a defendant and lawyer completely collapses, a court's refusal to substitute new counsel violates a defendant's right to effective assistance of counsel. *See State v. Gallagher* (*Gallagher II*), 2001 MT 39, ¶ 9, 304 Mont. 215, ¶ 9, 19 P.3d 817, ¶ 9. When a criminal defendant alleges that his counsel is providing ineffective assistance, a district court then "must make an adequate initial inquiry into the nature of those complaints and determine if they are seemingly substantial." *Gallagher I*, ¶ 15. Should the court conclude that the defendant presented a seemingly substantial complaint, the court must next hold a hearing to address the validity of those complaints. *See Gallagher I*, ¶ 15.

¶30 Kaske does not dispute that the court conducted an adequate initial inquiry. Instead, he argues that the court erred in concluding that he did not set forth seemingly substantial complaints concerning Borg's effectiveness. In order for the court to replace a defense attorney, the defendant bears the burden of presenting material facts that established a total lack of communication or ineffective assistance of counsel. *See Wilson v.*

11

*State*, 1999 MT 271, ¶ 19, 296 Mont. 465, ¶ 19, 989 P.2d 813, ¶ 19. Bare, unsupported allegations are insufficient to justify a district court appointing new counsel. *Wilson*, ¶ 19. Furthermore, a defendant's request for new counsel is within the sound discretion of the district court. *See Gallagher I*, ¶ 10. Therefore, we will only overturn a district court's decision if it abused its discretion. *See Gallagher I*, ¶ 10.

¶31 In his motion to the District Court, Kaske wrote that he had only met with Borg once and that she would not communicate with him. He went on to describe his understanding of the proceedings, his frustrations with delays and his inability to communicate with Borg. Kaske wrote that he felt Borg was "pushing her own agenda to satisfy the shortcomings of the district attorney's case. This is malicious prosecution by the district attorney and supported by the extreme bias of Ms. Borg towards the client. This is a direct violation of the clients Fifth/Sixth Constitutional Amendment Rights."

¶32 Although Kaske raised multiple complaints, none of these indicated a complete breakdown in communication. Kaske acknowledged that, at their one meeting, he and Borg "discussed the . . . extradition issue(s) along with many other issues for about 1 hour." Borg explained that she was waiting to receive Kaske's file and the New York information before she had another detailed conversation with him about the case. Also, Borg claimed that she or someone from her office spoke to Kaske at each of the various court hearings. Although Kaske made several blanket allegations

12

that Borg would not speak with him, Borg maintained in her response that a complete cessation of communications occurred only once Kaske asked the court to replace Borg.

¶33 While a defendant has the right to counsel, this right does not include a right to a particular attorney or a right to a particular defense. *See Gallagher II*, ¶ 16. Borg likely was not as available as Kaske wished. He and Borg also clearly had a difference in opinion on how to proceed with his case. It is a time-honored rule, however, that "[c]ourts must accord great deference to defense counsel's exercise of judgment in determining appropriate defenses and trial strategy." *Gallagher II,* ¶ 16.

¶34 Furthermore, Kaske's complaints did not appear in the vacuum of his motion. A court may rely on its own observations during trial regarding communications between counsel and defendant when determining whether it should grant a pretrial motion for a substitution of counsel. *See Gallagher II*, ¶ 12. Here, the court conducted several hearings where Kaske expressed his displeasure with Borg's representation. These hearings allowed the court numerous opportunities to observe the quality of communication between Kaske and Borg.

¶35 Borg was also Kaske's third defense attorney in this matter. In each case, Kaske expressed displeasure with counsel's representation. In the first two instances, the court replaced Kaske's lawyer. The third time, the court denied Kaske's request, noting that it would "not continue to allow him additional spins of the roulette wheel of representation."

¶36 The court had ample evidence that Kaske and Borg carried on communications, albeit strained. While Kaske and Borg clearly had a difficult relationship, the court also had sufficient evidence to conclude that the difficulties occurred because of Kaske's behavior. We will not require the court to continue replacing Kaske's counsel until he finds one that he likes. For these reasons, it was within the District Court's discretion to conclude that Kaske had not raised a seemingly substantial complaint against Borg. We thus conclude that the court did not err in refusing to appoint substitute counsel.

¶37 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE