No. 04-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 49

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

JAMES RALPH HENDERSHOT, III,

      Defendant and Appellant.

APPEAL FROM:    The District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2003-091,
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kristina Guest, Assistant Appellate Defender, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Montana Attorney General, Joslyn M. Hunt,
Assistant Attorney General, Helena, Montana

          George H. Corn, Ravalli County Attorney, T. Geoffrey Mahar,
Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  October 12, 2006

Decided:   February 21, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    James Ralph Hendershot III (Hendershot) was charged with felony aggravated assault, felony assault with a weapon, and misdemeanor partner or family member assault after a physical altercation with his wife, Denise.  As a result of these charges, the Twenty-First Judicial District Court, Ravalli County, revoked Hendershot's deferred sentence for a previous felony theft conviction and sentenced him to ten years at Montana State Prison (MSP) with five years suspended.  A jury subsequently found him guilty of the three assault charges.  He was then sentenced to ten years with the Department of Corrections (DOC) with five suspended.  This sentence was to run consecutively to his theft sentence.  During his criminal assault proceedings, Hendershot requested a new attorney.  The District Court denied his request.  He appeals the District Court's refusal to grant his request for a new attorney.  He also appeals the sentence requirement obligating him to pay court-appointed counsel costs and jury costs.  We reverse and remand.

## ISSUE

¶2    The dispositive issue on appeal is whether the District Court abused its discretion in refusing Hendershot's request for new counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On June 9, 2003, Hendershot and his wife Denise had a violent physical altercation in which Denise was injured and required medical evaluation and treatment.  After an investigation, the State charged Hendershot, on or around June

24, 2003, with felony aggravated assault, felony assault with a weapon, and misdemeanor partner or family member assault  The District Court appointed public defender Mark McLaverty (McLaverty) to represent Hendershot.  At his initial court appearance on June 25 with McLaverty, Hendershot pled not guilty to all charges.

¶4      Hendershot and Denise were on felony probation for theft at the time of the assault incident.  As a result of the charges involved in this case, the State moved to revoke Hendershot's prior probation.  McLaverty was also appointed to represent him in the revocation proceeding.  At the revocation hearing on July 16, 2003, attorney Mike Montgomery (Montgomery), an associate with McLaverty's law firm, appeared with Hendershot because McLaverty was having knee surgery.

¶5      At the close of the probation revocation hearing, the District Court determined that Hendershot violated his probation.  The prosecutor asked the court to commit Hendershot to DOC for 10 years with five suspended, and Montgomery, on behalf of Hendershot, agreed with the prosecutor's recommendation.  The District Court nonetheless followed the sentencing recommendations of Hendershot's probation officer and sentenced Hendershot to MSP for 10 years, with five suspended, for felony theft.

¶6      In a letter to Judge Langton dated July 17, 2003, Hendershot complained he had been inadequately represented at his probation revocation hearing.  He stated that Montgomery mistakenly thought the revocation hearing was Hendershot's initial appearance; therefore, he instructed Hendershot to say nothing and

3

Hendershot complied. Hendershot further noted in the letter that Montgomery failed to ask questions of the witnesses and made no mention of Hendershot's mental disorder which Hendershot believed was "to a large degree . . . the cause of the events" resulting in his assault charges. Hendershot requested a new hearing or a sentence change. The District Court forwarded a copy of Hendershot's letter to McLaverty but did not respond to Hendershot's request.

¶7 On July 25, 2003, McLaverty attended an omnibus hearing with respect to the instant case. He signed an omnibus hearing memorandum stating that Hendershot would assert the affirmative defense of justifiable use of force, as well as generally deny the charges. A status hearing was held on September 17, 2003. At that time, McLaverty informed the Court that a plea agreement had been reached. Based on this representation, the District Court set a change of plea hearing.

¶8 For the scheduled change of plea hearing held on October 1, 2003, Hendershot was transported from MSP to the Ravalli County Detention Center in Hamilton, Montana to attend the hearing. At the hearing McLaverty informed the court that Hendershot no longer wished to change his plea but in fact wished to proceed to trial. McLaverty also asked that Hendershot remain in jail in Hamilton pending trial so he would be able to communicate with counsel more easily than if he were returned to the prison in Deer Lodge. The District Court granted this request. The trial was scheduled for December 8, 2003.

4

¶9 Between the revocation hearing of July 16, 2003, and September 11, 2003, Denise undertook an aggressive letter-writing campaign to Judge Langton seeking a reduction of Hendershot's theft sentence. She wrote at least seven letters to the court, most of which are in the record, and all of which asked the District Court to reconsider its sentence, primarily based on Hendershot's ill health. She maintained that her injuries were not serious, and that not all of them were inflicted by her husband. She asked the court to place Hendershot on extended probation rather than prison time. On September 26, 2003, Denise wrote a letter to Montana Attorney General Mike McGrath, in which she claimed that prosecutor Geoff Mahar had threatened her with revocation of her probation if she did not answer questions to his satisfaction during Hendershot's revocation hearing. She claims she wanted to tell "the truth about what happened on 6-9-03" but neither Mahar nor the court gave her that opportunity at the hearing.

¶10 Subsequently, on October 27, 2003, Hendershot wrote a letter to the District Court requesting a new attorney. He complained that: (1) McLaverty had done little or nothing on his behalf; (2) McLaverty knew that Mahar had threatened Denise before the revocation hearing and that Denise had lied about the incident but McLaverty had not acted on this evidence; (3) McLaverty had not filed a petition for rehearing on Hendershot's behalf as Hendershot had requested, and (4) McLaverty was incompetent. He also expressed his displeasure with Montgomery, whom he stated was incompetent, was unprepared for the revocation

5

hearing, and had not asked his wife questions that could have elicited a more truthful explanation of the events.

¶11   The District Court set a hearing on Hendershot's request for new counsel for November 12, 2003. At the hearing, Montgomery again appeared instead of McLaverty. Hendershot repeated his complaints regarding what had occurred at the probation revocation hearing. He stated that Denise was coerced into falsely testifying against him, that some of her injuries were either work-related or self-inflicted, and that McLaverty knew but failed to act on this information. He claimed that Denise told McLaverty prior to the probation revocation hearing that the State threatened her, but that she did not tell him (Hendershot) until after he went to prison.

¶12   When asked by the court if he wanted to respond to Hendershot's allegations, Montgomery, on behalf of McLaverty, replied that as public servants, they try to give the best representation to their clients but that frequently the clients do not like to hear what they have to say. Montgomery disagreed with Hendershot's characterizations of his performance, but concluded that "communication between me, my office, and my client has broken down to such an irreparable state that we wouldn't be able to go forward from this point on if the Court should decide to keep us on. For that reason, on behalf of McLaverty & Associates, Mark McLaverty and myself, we ask to be removed and discharged from our duties."

¶13    Ravalli County Attorney George H. Corn represented the State at the hearing.  He contended that Hendershot engineered his complaint regarding McLaverty to frustrate the prosecution.  Corn asked that the District Court take note that Hendershot failed to request new counsel for three and a half months after he was supposedly dissatisfied.  Corn also asked that Hendershot's request for new counsel be granted only if he waived his right to a speedy trial.

¶14    When the District Court asked why he waited so long to request a different lawyer, Hendershot explained that while he had learned in September that his wife had lied during the revocation hearing, he had worked since that time trying to get McLaverty to represent him vigorously.  He said he had written McLaverty a letter requesting a visit, but McLaverty visited with him only once over a period of several months, that being on the morning of October 1, 2003.  As an example of McLaverty's ineffective representation, Hendershot claimed that McLaverty scheduled the October 1, 2003, change of plea hearing without first establishing that Hendershot desired to plead guilty.

¶15    Upon further inquiry by the court, Hendershot acknowledged that the appointment of new counsel would require a delay in the trial, but he refused to waive his right to a speedy trial.  He said he would need advice of counsel before making such a determination.

¶16    The District Court denied Hendershot's request to appoint a different lawyer stating:

> I guess where I'm at here, Mr. Hendershot, is I don't find your allegations particularly credit worthy and I don't find you a particularly credible person and I think your complaints, particularly the timing of your complaints, is motivated more by procedural gamesmanship than true dissatisfaction with your attorney. I respect Mr. Montgomery's statement here of your allegations of damage to the fabric of your attorney-client relationship with him, but that's something that you've caused. I don't think it's been caused by your attorneys.
>
> If you're unwilling to waive your right to a speedy trial, then I have an obligation to see that you get one. So I'm going to deny your attorney's request to be relieved and deny your request for a change of attorney, and this will remain set for the pretrial conference on November 14 and the trial as scheduled.

It is from this denial of his request for new counsel that Hendershot appeals.

¶17 Subsequently, one week before the scheduled trial, Hendershot wrote a letter to the District Court requesting a continuance, explaining that he had retained private counsel and was prepared to sign a waiver of speedy trial. The District Court did not receive this letter until immediately before the trial began. The court denied this request.

¶18 Hendershot's jury trial was held on December 8 and 9, 2003. The jury found him guilty of all three assault charges. In addition to various costs and fines, the District Court sentenced Hendershot to ten years with DOC, five years suspended. This sentence was to run consecutive to Hendershot's theft sentence.

**STANDARD OF REVIEW**

¶19 Absent an abuse of discretion, this Court will not overrule a district court's ruling on a request for substitution of counsel, which is within the sound discretion of the district court. *State v. Gallagher*, 2001 MT 39, ¶ 4, 304 Mont. 215, ¶ 4, 19

8

P.3d 817, ¶ 4 (*Gallagher II*). An abuse of discretion has occurred only if the district court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Gallagher II*, ¶ 4 (quoting *Groves v. Clark,* 1999 MT 117, ¶ 25, 294 Mont. 417, ¶ 25, 982 P.2d 446, ¶ 25).

## DISCUSSION

¶20 *Did the District Court abuse its discretion in refusing Hendershot's request for new counsel?*

¶21 Hendershot argues that he made seemingly substantial complaints concerning McLaverty's representation, including but not limited to McLaverty's failure to appear at the revocation hearing, his failure to respond to Hendershot's attempts at correspondence, and his meeting with Hendershot only once in the five months McLaverty represented him. He pointed out that on this occasion, McLaverty erroneously informed the court that Hendershot intended to plead guilty when in fact such a plea had never been discussed between them. He also argues that McLaverty failed to appear at the hearing scheduled to address Hendershot's request for new counsel. Hendershot further maintains that the District Court improperly failed to assess McLaverty's representation of him at the November 12, 2003, hearing. Hendershot also asserts that his request for new counsel was timely, and that the District Court should have focused on his communication breakdown with McLaverty rather than the timeliness of the request.

9

¶22    The fundamental right to effective assistance of counsel is guaranteed by both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution.  *State v. Garcia*, 2003 MT 211, ¶ 12, 317 Mont. 73, ¶ 12, 75 P.3d 313, ¶ 12.  The right to the effective assistance of counsel ensures the ability of the accused to receive a fair trial.  *Gallagher II*, ¶ 7 (citing *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)).  In *Strickland*, the United States Supreme Court established a two-part test to determine when counsel is ineffective:    First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.    This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . . *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Generally, the defendant must establish both parts of the test to prevail.  *Wilson v. State*[1], 1999 MT 271, ¶ 12, 296 Mont. 465, ¶ 12, 989 P.2d 813, ¶ 12 (citing *State v. Jones,* 278 Mont. 121, 133, 923 P.2d 560, 567 (1996)).  However, in some cases counsel's performance is so deficient a presumption of ineffectiveness arises and the second part of the test becomes unnecessary.  *Wilson*, ¶ 12 (citing *United States v. Cronic*, 466 U.S. 648, 660, 104 S. Ct. 2039, 2047 (1984)).  "Only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be

[1]  Overruled in part on other grounds by *Gallagher II*.

10

sufficient without inquiry into counsel's actual performance at trial." *Wilson*, ¶ 12.

¶23 It is within the sound discretion of the district court to rule on requests for appointment of new counsel. *State v. Gallagher*, 1998 MT 70, ¶ 10, 288 Mont. 180, ¶ 10, 955 P.2d 1371, ¶ 10 (*Gallagher I*). When a defendant alleges ineffective assistance of counsel, the district court must determine if the complaints are substantial by making an adequate initial inquiry into the nature of the complaints. *Gallagher I, ¶* 15. The district court is required to hold a hearing to address the validity of the complaints if it concludes that the defendant has presented seemingly substantial complaints regarding counsel. *Gallagher I*, ¶ 15.

¶24 At a hearing inquiring into complaints against counsel, it is incumbent upon the defendant to present material facts establishing a total lack of communication. Bare unsupported allegations are insufficient to meet this burden. *Gallagher II*, ¶ 10. At such a hearing:

> A trial court's duty, when considering a motion for substitution of counsel, is to make adequate inquiry into a defendant's complaint and to determine whether a conflict is so great as to result in a total lack of communication. *State v. Morrison* (1993), 257 Mont. 282, 285, 848 P.2d 514, 516. If the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates the defendant's right to effective assistance of counsel. *United States v. Moore* (9th Cir.1998), 159 F.3d 1154, 1158 (citing *Brown v. Craven* (9th Cir. 1970), 424 F.2d 1166, 1170).

*Gallagher II*, ¶ 9.

¶25 We conclude that the record supports Hendershot's complaints regarding McLaverty. McLaverty did not attend either of the two substantive procedural

hearings—Hendershot's revocation hearing and the hearing on the adequacy of his representation, sending his associate in his stead. While knee surgery is a valid excuse, the fact remains that McLaverty did not answer Hendershot's request for a visit or go to see him during the months between his incarceration and the October hearing. Additionally, it appears that McLaverty scheduled a change of plea hearing without discussing a change of plea with Hendershot. During the revocation proceedings, McLaverty's associate Montgomery declined to question either of the prosecution's witnesses, instructed Hendershot to remain silent, and joined in the State's recommendation for sentencing. While this latter alleged deficiency occurred during revocation proceedings and not during representation of Hendershot in the instant case, it set the stage for Hendershot's dissatisfaction of the firm that was appointed to represent him in both proceedings.

¶26    Finally, it is significant that Montgomery told the District Court at the hearing on adequacy of counsel that communications between attorney and client had reached "an irreparable state," and he actively joined in Hendershot's request that the attorney-client relationship be severed.

¶27    In *Wilson*, we determined that a presumption of ineffectiveness can arise upon the establishment of an "irreconcilable conflict" and that once the presumption is established the defendant need not satisfy the second prong of the *Strickland* test. *Wilson*, ¶ 17. We also held that when the error alleged is the denial of a timely request for substitution of counsel, "the issue is not whether defendant received effective assistance of counsel at a subsequent trial, but

12

whether his conflict with counsel was sufficient that it required substitution of counsel at the time the request was made." *Wilson*, ¶ 25. We noted that "[o]nly by analyzing the District Court's error in that fashion is the importance of pretrial representation, particularly with regard to trial preparation, and effective plea negotiations, taken into consideration." *Wilson*, ¶ 25. Here, McLaverty's subsequent performance at trial—and indeed, after the November hearing—is irrelevant to the issue before us; rather, we must analyze counsels' performance and the relationship between Hendershot and his counsel as of the time he requested substitution.

¶28 In *United States v. Williams*, 594 F.2d 1258 (9th Cir., 1979), which was cited with approval by this Court in *Gallagher II*, ¶ 13, Williams sought appointment of new counsel a month prior to trial, citing irreconcilable conflicts and lack of communication between him and appointed counsel. His motion and a renewed motion were denied. In finding error, the Ninth Circuit Court of Appeals noted that the record demonstrated that "client and attorney were at serious odds and had been for some time." *Williams*, 594 F.2d at 1259-60. In reversing Williams' conviction on the grounds that the district court erred in denying his request for substitution of counsel, the court observed that Williams' complaints were confirmed by Williams' counsel; thus, Williams' prima facie showing of an irreconcilable conflict was made and was in fact undisputed.

¶29 Similarly, Hendershot made repeated complaints about the relationship between him and his counsel. These complaints date back to the day following his

probation revocation hearing, and were made well in advance of trial. Additionally, at the hearing, the court heard testimony from Hendershot's counsel himself to the effect that the attorney-client relationship was in an irreparable state and that the firm "wouldn't be able to go forward." Nonetheless, and without evaluating McLaverty's or Montgomery's performances, the District Court adopted the arguments of the State, concluding that Hendershot's allegations were not credit-worthy. In addition, the court inexplicably found that Hendershot had caused the breakdown with his lawyer.

¶30 It is apparent from the record that the conflict between Hendershot and McLaverty arose early in the relationship, during revocation proceedings, demonstrating that "client and attorney were at serious odds . . . for some time." *Williams*, 594 F.2d at 1259-60. The attorney-client relationship continued to deteriorate until it reached the "irreparable state" described by both client and counsel at the legal representation hearing. Thus, the type of "complete collapse" in the attorney-client relationship envisioned in *Gallagher II* and the "irreconcilable differences" discussed in *Wilson* requiring substitution of counsel, were both established by Hendershot *and* reinforced by Montgomery. For these reasons, we conclude the District Court abused its discretion in denying Hendershot's timely request for substitution of counsel.

¶31 We note that Hendershot has also appealed the District Court's order requiring him to pay court-appointed counsel costs and jury costs. In light of our disposition of Issue One, we need not address this issue.

CONCLUSION

¶32     The Judgment of the District Court is reversed.  This matter is remanded to the District Court for further proceedings in accordance with this Opinion.


                                        /S/ PATRICIA COTTER


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART


Justice John Warner dissents.

¶33     I dissent.  I would affirm the judgment of the District Court.

¶34     In ¶¶ 19, 23 and 24 the Court pays lip service to the rules stated at ¶¶ 4, 9, and 10, in *Gallagher II*: that it is within the sound discretion of the district court to rule on requests for appointment of new counsel, and that an abuse of discretion has only occurred if the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.  In my view, the Court does not fairly construe the record and inexpiably glosses over the trial judge's findings of fact that Hendershot's complaints about his lawyers were not credible and that he concocted his alleged problems with McLaverty and Montgomery to frustrate the prosecution of this case.

¶35     In the letter to the judge from Hendershot, dated July 17, 2003, which is in the record and relied on by the Court, Hendershot states that he met with

Montgomery on July 16, and they discussed the upcoming revocation hearing. Hendershot made no objection to Montgomery, rather than McLaverty, appearing as his counsel for the probation revocation hearing.

¶36 At the probation revocation hearing, noted in ¶ 4, Denise was called as a witness. She made it clear that she did not want to testify against Hendershot and only did so because the State required her attendance and testimony by subpoena. However, she did graphically describe the brutal beating she suffered at Hendershot's hands. Denise testified that Hendershot: beat her about her head, face, chest, abdomen and back, at times with a hardbound book; choked her almost to the point of unconsciousness, leaving red marks on her neck; may have punctured one of her eardrums; and fractured one of her ribs. Denise confirmed that the pictures introduced by the State depicted the numerous marks, scrapes and bruises inflicted by Hendershot.

¶37 After the presentations of counsel at the probation revocation hearing, the District Court asked Hendershot if he had anything he would like to say, to which he replied, "No, thank you."

¶38 In the letter Hendershot wrote to the District Court mentioned in ¶ 6, he did claim inadequate representation by counsel at the probation revocation hearing. His complaints were that: Montgomery told him not to say anything when he wanted to apologize to Denise and the Court; Montgomery asked no questions of the witnesses; and Montgomery did not mention that he had a mental disorder which "to a large degree" caused the altercation between himself and Denise.

Hendershot requested a new hearing or a sentence change. However, he made no complaints about McLaverty's representation in the present case.

¶39 Montgomery's decision not to ask questions of Denise at the probation revocation hearing was wise. The State had photographs of the severe injuries inflicted on Denise, which proved her testimony was accurate. There was no viable defense to the allegations at that time.

¶40 In the sentencing phase of a proceeding it could well be prudent to show remorse. However, in this instance Hendershot had recently pled not guilty to a charge of aggravated assault for causing Denise's injuries. It would be, to say the least, difficult at a later trial to claim he had not hurt her if he had apologized on the record for doing so. Likewise, it would be inconsistent with denying that he had brutally beat Denise if Hendershot was to blame a purported mental illness for administering that same beating. Montgomery's strategy in advising Hendershot to remain silent at the probation revocation hearing cannot be faulted in considering this case. These things are obvious. They support the District Court's conclusion that Hendershot's complaints about his lawyer were not credible. Certainly, the District Court's finding was not arbitrary, and did not exceed the bounds of reason.

¶41 Hendershot's delay in requesting new counsel, along with his refusal to consent to a delay of that trial, lends strong support to the District Court's conclusion that his complaints about his lawyers were for the purpose of frustrating the prosecution. The conclusion of the District Court that it was

17

Hendershot, not his lawyers, that was the cause of the problem, did not exceed the bounds of reason.

¶42 When asked if he wanted to respond to Hendershot's allegations of ineffectiveness, Montgomery, on behalf of McLaverty, replied:

> Not formally, Your Honor, other than to say that as a public official – as a public servant we always try to give the best representation we can to our clients. We speak with them. A lot of times they don't hear the type of result they would like to hear.
> In this case, while I disagree completely with Mr. Hendershot's characterizations about my performance, about my office's performance, I have spoken with Denise, the alleged victim in this case; and I agree, much like Mr. Corn, that Denise has a lot of problems.

¶43 It was after this that Montgomery said that he believed that communication between him, his office, and Hendershot had broken down. It was Montgomery, not Hendershot, who used the magic word, "communication." Notably, no specifics of how communication was lacking, or why representation could not be effectively continued were offered by either Montgomery or Hendershot.

¶44 Immediately after Montgomery's statement, the District Court also disagreed with Hendershot's characterizations about the performance of his lawyers and found that his complaints were not credible, as stated in ¶ 16 above.

¶45 The Court also acknowledges, at ¶ 17, that Hendershot wrote a letter to the District Court requesting a continuance, which the judge received the morning of trial. The facts surrounding this episode further bolster the District Court's conclusion that Hendershot's complaints about his lawyers were not credible.

¶46    On the morning the trial commenced, Hendershot, in accord with his letter, orally asked for a continuance because he had retained a new lawyer. He affirmatively represented to the court that he had retained another attorney, Mr. Eschenbacher. However, Eschenbacher had made no appearance.

¶47    Deputy County Attorney William E. Fulbright (Fulbright), appearing for the State, argued against a continuance, noting the State was ready for trial and that if Eschenbacher had truly been retained he would have contacted Fulbright. Fulbright also brought to the court's attention that Hendershot's right to a speedy trial was a concern. Then, Hendershot said that Eschenbacher advised him to waive his right to a speedy trial, and he was prepared to do so.

¶48    The District Judge stated:

> Well, I'm of the opinion that you're just attempting to manipulate the Court some more, and this is untimely and I think your goal here today is just not to go to trial. And we do have a large number of jurors that have come for this case and the State is ready to proceed and has its witnesses, and I'm sure Mr. McLaverty is prepared to go, and I don't see any good cause to delay this trial again. If we do, it just raises havoc in our calendar and delays other trials, and we're just not going to go there.

¶49    The trial then commenced. After the end of the first day of trial, Eschenbacher appeared before the District Court and informed the court, directly contrary to Hendershot's representation, that he had not been retained as counsel for Hendershot in this case. This portion of the record further supports the District Court's conclusion that Hendershot is not a credible witness.

¶50 Hendershot did complain about his lawyers. However, the record contains substantial evidence supporting the District Court's conclusion that the reason Hendershot wanted new counsel was not because he and McLaverty could not communicate, or because McLaverty had not represented him properly. Rather, a fair view of the record supports the determination of the District Court that Hendershot complained about his attorney because he wanted a delay so that he could possibly secure a dismissal of the charge for lack of a speedy trial. When the credibility of a witness is at issue this Court should not substitute its judgment for that of the District Court. *Burns v. Plum Creek Timber Co.*, 268 Mont. 82, 84, 885 P.2d 508, 509 (1994); *State v. Gallagher*, 2001 MT 39, ¶ 19, 304 Mont. 215, ¶ 19, 19 P.3d 817, ¶ 19 (*Gallagher I*).

¶51 Hendershot should not be able to use bogus complaints about his lawyers to secure a reversal of his conviction. This Court cannot countenance manipulative tactics at the expense of the efficient administration of justice. *State v. Craig*, 274 Mont. 140, 153, 906 P.2d 683, 691 (1995). Under these circumstances, the District Court did not abuse its discretion in denying Hendershot's motion for appointment of different counsel. What the Court does here is ignore the substance of *Gallagher II* and substitute its findings of fact for those of the District Court. I dissent.

/S/ JOHN WARNER

20

Justice Jim Rice and District Court Judge Douglas G. Harkin join in the foregoing dissent.

/S/ JIM RICE
/S/ DOUGLAS G. HARKIN
District Judge