

DA 10-0283

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 130

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

TONY CHRISTOPHER GARCIA,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2009-83
Honorable Jeffrey H. Langton, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Lisa S. Korchinski, Assistant
Appellate Defender, Helena, Montana


      For Appellee:

            Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General, Helena, Montana

            William Fulbright, Ravalli County Attorney, Hamilton, Montana


                  Submitted on Briefs:  May 18, 2011

                         Decided:  June7, 2011


Filed:

_____
                         Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Tony Christopher Garcia (Garcia) appeals from the sentence imposed by the Twenty-First Judicial District Court, Ravalli County. We affirm.

¶2 Garcia is the father of R.G. On November 17, 2008, when R.G. was approximately two months old, Garcia was caring for her alone while R.G.'s mother went to work. A short time later, Garcia called R.G.'s mother at work to tell her that he was taking R.G. to the hospital. Garcia said he tripped over the dog while holding R.G. and fell on top of her. Garcia said that after the fall, R.G. did not seem to be breathing, so he "shook her frantically" to get a response. R.G. was examined at the hospital and sent home with her parents.

¶3 The next day, November 18, 2008, R.G.'s mother took R.G. to her parents' home. R.G.'s grandmother noticed R.G. was displaying unusual symptoms and R.G. was taken immediately to Stevensville Community Medical Center. R.G. was found to have abnormal neurological activity, and was immediately transferred to Community Medical Center in Missoula. There, it was discovered that R.G. was suffering from a traumatic subdural hemorrhage.

¶4 R.G. was then transferred to Sacred Heart Children's Hospital ("Sacred Heart") in Spokane, Washington. Doctors from Sacred Heart found R.G. suffered whiplash type injuries, widespread bleeding in her brain, and severe retinal hemorrhaging. They concluded R.G.'s injuries were consistent with violent shaking. R.G. suffered severe injuries, and the permanent effects of R.G.'s injuries may not be known for many years.

¶5     Garcia was charged with aggravated assault and found guilty after a jury trial. A sentencing hearing was held on March 23, 2010. Garcia was sentenced to Montana State Prison for 20 years, with five years suspended. Judgment was entered on April 12, 2010. Garcia appeals his sentence, arguing that his sentence was enhanced because he refused to admit guilt.

## STANDARD OF REVIEW

¶6     When an offender is eligible for sentence review, we review a criminal sentence for legality only. *State v. Gunderson*, 2010 MT 166, ¶ 37, 357 Mont. 142, 237 P.3d 74. Because Garcia was sentenced to more than one year of actual incarceration, he is eligible for sentence review. Section 46-18-903, MCA. Therefore, we review Garcia's sentence for legality only. *Gunderson*, ¶ 38; *State v. McDowell*, 2011 MT 75, ¶ 11, 360 Mont. 83, ___ P.3d ___. When reviewing for legality, we confine our review to whether the sentence falls within the statutory parameters. *State v. Murray*, 2011 MT 10, ¶ 12, 359 Mont. 123, 247 P.3d 721.

## DISCUSSION

¶7     *Did the District Court sentence Garcia illegally by inappropriately enhancing his sentence because he refused to admit guilt?*

¶8     Garcia argues the District Court "inappropriately used Garcia's belief he's innocent to enhance his sentence." The State argues Garcia is urging a hyper-technical reading of both the oral and written pronouncements, and that the District Court is permitted to consider lack

3

of remorse. The State also argues the District Court did not violate Garcia's rights to remain silent and maintain his innocence.

¶9     Upon conviction for aggravated assault, § 45-5-202(2), MCA, allows for a sentence of imprisonment "in the state prison for a term not to exceed 20 years" and a fine of "not more than $50,000." There is no question that Garcia's sentence, 20 years at Montana State Prison with five years suspended, was within the statutory parameters for aggravated assault.

¶10    A district court is prohibited from augmenting a defendant's sentence because he refuses to confess to a crime or invokes his privilege against self-incrimination. *State v. Rennaker*, 2007 MT 10, ¶ 44, 335 Mont. 274, 150 P.3d 960. A district court cannot punish a defendant for refusal to admit guilt. *Id*. at ¶ 45. A defendant may not be punished for failing to accept responsibility for the crime when the defendant has expressly maintained his innocence and has a right to appeal his conviction. *State v. Morris*, 2010 MT 259, ¶ 22, 358 Mont. 307, 245 P.3d 512. A defendant may be sentenced based upon lack of remorse so long as there is affirmative evidence of the lack of remorse. *Id*.

¶11    In an appeal of this nature, we consider: 1) whether Garcia invoked his right to remain silent or maintained his innocence; 2) if there is a conflict between the oral pronouncement of sentence and the written sentence, the oral pronouncement controls; and 3) the evidence used by the district court to determine the sentence in this case. *Rennaker*, ¶¶ 47-49.

¶12    First, we find that Garcia did not invoke his right to remain silent, as he testified at trial and made a statement at his sentencing hearing. Garcia does however, maintain his innocence. At sentencing, his attorney said:

4

Chris does maintain that he dropped his daughter and that he shook her in response to that, and of course, on the one hand the Court can't increase a punishment for not admitting guilt or agreeing with facts. But in a sense, Chris does admit guilt. He's always admitted that he caused her injuries . . . he doesn't admit that he did that intentionally.

Second, while there are minor semantic differences between the oral pronouncement and written sentence, we find the oral pronouncement of sentence controls. *Id.* at ¶ 48.

¶13 Finally, a district court is permitted to "consider any evidence relevant to a defendant's sentence, including evidence relating to the crime, the defendant's character, background history, mental and physical condition, and any other evidence the court considers to have probative force." *Id*. at ¶ 49. It is the sentencing policy of the State of Montana, as enacted by the legislature, to "punish each offender commensurate with the nature and degree of harm caused by the offense and hold the offender accountable." Section 46-18-101(2)(a), MCA.

¶14 Here, the District Court considered a number of different factors. It considered the recommendations of Garcia's counsel for a five-year deferred sentence, with 100 days of jail time, and the State's recommendation for a 20 year commitment to Montana State Prison, with five years suspended. The court considered the testimony of the probation and parole officer and her sentencing recommendation, and numerous witnesses called by both the State and Garcia. The District Court considered the victim, R.G., her age, and her health both before and after Garcia shook her, and that her long-term prognosis is unknown and may be unknown for years.

¶15 The District Court also discussed Garcia's characteristics, including his age, education, work history, criminal history, and the fact that he tried to conceal his involvement in the incident. The District Court found that Garcia's story "of what happened evolved over time, and it seemed to evolve as more facts became known and as he could not deny certain facts that became known." The District Court said Garcia:

> fail[ed] to give an accurate history of what happened, which adversely affected the response of treatment and type of treatment that was offered. Had the emergency room physician here in Hamilton known, or at least had a better idea of what really happened, this child would have had more intensive medical treatment much sooner than she did, which could have - - well, it certainly would have been to her benefit. But instead the Defendant minimized his involvement in this offense. He covered up, to the extent that he could, his involvement in this offense, and to this day has not really admitted the extent of his complicity in this event. He admitted the injuries caused to his child, but not to actually what the medical evidence indicates happened. So that, to me, does not bode well for rehabilitative potential.

¶16 The court also discussed Garcia's history of anger issues, and his history of drug and alcohol abuse, which he attempted to obscure, and his potential for rehabilitation. Finally, the District Court considered the medical evidence, as presented by "highly educated physicians" from Sacred Heart. One found R.G.'s retinal hemorrhages were worse than those seen in ejection from a motor vehicle collision or from a two-story fall and were consistent with repetitive back and forth trauma. Another said that R.G.'s injuries were some of the worst she had seen in her career.

¶17 In imposing the sentence of 20 years at the Montana State Prison, with five years suspended, the District Court said:

I think the gravity of this offense demands a prison sentence, and in addition to that, I believe the Defendant's state of mind is such that I do not see any rehabilitation occurring in any short period of time. I think it's going to take an extended period behind bars before the Defendant realizes what he truly did in this case. I also have to note the potential long-term, if not – hopefully not, but the potential lifelong effects on the victim, which are just simply unknown at this time.

¶18 Far from punishing Garcia for maintaining his innocence, the District Court imposed the sentence because of the gravity of the offense – the lifelong consequences that Garcia's actions will have on his daughter, R.G. That required a prison sentence in the eyes of the District Court. The District Court found that Garcia's continued minimization of what actually occurred caused R.G.'s medical treatment to be delayed. After reviewing the entire transcript of the sentencing hearing, it is clear that Garcia's sentence resulted from the combination of numerous factors, not because he refused to admit guilt. Garcia has anger issues, along with drug and alcohol problems that he attempted to minimize. He also admittedly caused serious, potentially lifelong, injuries to his two month old daughter, although he disputes he intended to, and his actions after causing the injuries delayed R.G.'s treatment. Based upon all the evidence considered by the District Court in this case, we cannot say the District Court's sentence, which was within the statutory parameters, was augmented because Garcia maintained his innocence.

## CONCLUSION

¶19 For the reasons stated above, we affirm.

/S/ MICHAEL E WHEAT

7

We Concur:


/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ BETH BAKER