DA 11-0630

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 11

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KAMLA L. BEKEMANS,

       Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifth Judicial District, In and For the County of Beaverhead, Cause No. DC 10-3335 Honorable Loren Tucker, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Koan Mercer, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

          Jed Fitch, Beaverhead County Attorney, Dillon, Montana

                            Submitted on Briefs: October 2, 2012
                                        Decided: January 22, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Kamla L. Bekemans (Bekemans) appeals from her convictions in the Fifth Judicial District Court, Beaverhead County, of felony criminal endangerment; failing to use a lamp on a parked vehicle; failure to carry flares or other warning devices; failure to display warning devices on a disabled vehicle; operating a vehicle without insurance; and failure to park as close as practicable to the edge of the shoulder.  We affirm in part and reverse in part.

¶2     Bekemans presents the following issues for review:

¶3     *Issue One: Whether sufficient evidence supports Bekemans' criminal endangerment conviction.*

¶4     *Issue Two:    Whether Bekemans was denied her right to be personally present at all critical stages of the trial.*

¶5     *Issue Three:  Whether Bekemans was denied effective assistance of counsel.*

¶6     *Issue Four:   Whether the District Court violated Bekemans' constitutional rights by basing its sentence in part on her refusal to acknowledge guilt.*

¶7     *Issue Five:   Whether the District Court had the authority to restrict Bekemans' eligibility for parole.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶8     Brandon Davis (Davis) was killed in the early morning hours of July 28, 2009, when the vehicle that he was driving collided with a small bus parked in the middle of Interstate 15 (I-15).  Bekemans had been driving the bus home to Livingston after purchasing it in Utah when it began to chug, slow down, and lose power intermittently.  Bekemans had a mechanic

at a truck stop near Idaho Falls examine the bus, but the mechanic could not identify the problem. After having difficulty crossing Monida Pass, the bus again started slowing down and chugging near mile marker thirty-two, south of Dillon. Instead of safely pulling the bus onto the shoulder of the road on the dark, moonless night, Bekemans stopped the bus in the middle of the right, northbound lane of traffic.

¶9 Bekemans' attempts to restart the bus failed. After stopping the bus, Bekemans turned the engine off and then tried to restart the bus. When she turned the key, however, the "Wait to Start" light came on that is common to vehicles with diesel engines. Not knowing that she simply had to wait a couple of seconds for the light to extinguish before cranking the engine, Bekemans turned the key to the off position.

¶10 Bekemans failed to deploy standard warning devices after she failed to restart the bus. Bekemans was not carrying flares or emergency reflective triangles. She did not know how to activate her hazard lights. Upon finding herself parked in the middle of the interstate highway on a dark night without any warning devices deployed, Bekemans decided to turn the bus's lights off. She told people on the scene after the crash that she had turned her lights off to conserve battery power. She claimed that she turned them back on whenever she saw a car approaching.

¶11 Bekemans had failed to turn her lights on to warn approaching drivers before the collision, however. Michael Twilleager (Twilleager) passed Bekemans' bus while it was parked in the middle of the interstate. Twilleager, a professional driver for a transportation company, had been driving a large passenger van north on I-15 on the night of the crash.

3

About a mile before reaching Bekemans, Twilleager saw two pairs of taillights in front of him. Twilleager watched the vehicle in the left lane pull away from the other vehicle, and then the taillights in the right lane disappeared. Twilleager mistakenly assumed that the vehicle had pulled onto the shoulder of the road. As he approached, Bekemans' lights remained off. Twilleager saw Bekemans' bus in his lane at the last moment. He was able to narrowly avoid a collision by swerving into the left lane. He immediately called 9-1-1 to warn of the situation.

¶12    Jeff Buchman (Buchman), a professional truck driver, also passed Bekemans' bus on the night of the crash. Buchman saw what appeared to be flashing lights come on in the right lane as three trucks approached Bekemans' bus a ways in front of him. He watched as the three trucks put on their left turn signals and went around the flashing lights. After the three trucks had passed, the flashing lights disappeared. Buchman heard the drivers talking to each other on their CB radios, so he knew that a vehicle was in the road. Buchman slowed down to forty-five miles per hour and approached with his bright headlights on. Even so, Buchman did not see the bus in front of him until Bekemans turned her lights back on when he was one-quarter of a mile away. Buchman moved into the left lane and passed Bekemans going thirty miles per hour. After he passed the bus, Buchman warned a driver behind him on his CB radio that a bus was stopped in the middle of the interstate.

¶13    Davis received no such warning. He was traveling north on I-15 on July 28, 2009, on his way home to Red Lodge from Boise, Idaho. He was eighteen years old. Davis was reportedly driving well above the seventy-five mile-per-hour speed limit, and the toxicology

4

report indicated that he had consumed an entire bottle of Robitussin Cough Syrup. Even so, a number of drivers whom he had passed just miles before the collision testified that they did not observe anything to indicate that his driving was impaired.

¶14 Unlike Twilleager and Buckman, Davis did not see Bekemans' bus in the middle of the interstate until it was too late. Davis may have swerved to the right a split-second before the collision, but there were no skid marks and no indication that he had attempted to engage his brakes. A witness testified that he saw Bekemans' bus with its lights on just after the moment of impact.

¶15 Bekemans was charged with criminal endangerment, a felony, and other traffic violations as noted above. J.B. Anderson (Anderson), the first attorney assigned to represent Bekemans, moved to withdraw from the case at Bekemans' request on Thursday, November 4, 2010. The next day, the District Court scheduled a show-cause hearing for Tuesday, November 9th. A notice was mailed to Bekemans informing her that her attendance was required. Bekemans failed to appear at the hearing.

¶16 At the hearing, the judge told Anderson that he wanted to hear from Bekemans. Anderson responded that he had talked to Bekemans on the phone the day before the hearing. He said that he made sure that Bekemans knew about the hearing. Anderson also said that he had told Bekemans that he could ask for a continuance if she could not make it, but that she had not asked him to do so. The judge informed Anderson that he was considering issuing a bench warrant and asked him to speak on Bekemans' behalf. Anderson responded, "I would hate to see that happen, but maybe she needs a wake-up call. I just think this is a

5

person that just doesn't give a rip, Your Honor." Anderson did, however, convince the judge to not issue a bench warrant at that time. The judge rescheduled the hearing for November 23, 2010, which Bekemans attended and participated in. At the hearing, the court found that Anderson and Bekemans had lost all meaningful ability to communicate and granted Anderson's motion to withdraw.

¶17 The District Court conducted a two-day trial on April 21-22, 2011. The jury convicted Bekemans of felony criminal endangerment and a number of the charged misdemeanor traffic offenses. Bekemans was sentenced to the custody of the Montana Department of Corrections (DOC) for ten years with all but five years suspended. The sentencing order requires Bekemans to complete a specific rehabilitation program before she can be released from custody.

## STANDARD OF REVIEW

¶18 We review *de novo* claims of insufficient evidence. *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, 160 P.3d 511. Claims that a defendant received ineffective assistance of counsel are mixed questions of fact and law, which we also review *de novo*. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, 97 P.3d 1095. We exercise plenary review over constitutional questions, including alleged violations of a defendant's constitutional right to be personally present at all critical stages of trial. *State v. Charlie*, 2010 MT 195, ¶ 21, 357 Mont. 355, 239 P.3d 934.

## DISCUSSION

¶19 *Issue One: Whether sufficient evidence supports Bekemans' criminal endangerment*

*conviction.*

¶20 We review the record for sufficient evidence in the light most favorable to the prosecution. *State v. Gunderson*, 2010 MT 166, ¶ 58, 357 Mont. 142, 237 P.3d 74. There is sufficient evidence to support a conviction if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Finley*, 2011 MT 89, ¶ 18, 360 Mont. 173, 252 P.3d 199. It is the jury's role as factfinder to evaluate the credibility of witnesses, weigh the evidence, and ultimately determine which version of events should prevail. *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74. Thus, it is immaterial to our review whether the evidence could have also supported a different result. *Weigand*, ¶ 7.

¶21 A person commits the offense of criminal endangerment if the person knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another. Section 45-5-207(1), MCA. With respect to the offense of criminal endangerment, a person acts knowingly when the person is aware that there exists the high probability that her conduct would create a substantial risk of death or serious bodily injury to another. Section 45-2-101(35), MCA; § 45-5-207(1), MCA.

¶22 The uncontroverted evidence presented at trial established that Bekemans bought a small bus that she did not know how to fully operate. Bekemans drove the bus from Utah to Montana without insurance and without proper emergency warning devices. Bekemans continued driving the bus even after it began experiencing mechanical difficulties. Bekemans then stopped her bus in the middle of an isolated section of the interstate highway

7

and turned off her lights during the dark, moonless night. There is no indication that Davis saw the bus in the middle of the road more than a split-second before the crash. Bekemans claimed to have turned her lights back on whenever she saw a vehicle approaching, but she had previously failed to turn her lights on to give adequate warning to other drivers. One witness testified that as he was approaching, Bekemans completely had failed to turn her lights on. Another witness testified that Bekemans turned her lights on one-quarter of a mile before he passed her even though he had his bright headlights on and had slowed down to forty-five miles per hour.

¶23 Bekemans argues that no rational jury could have found that her lights were not on at the moment of impact. Bekemans bases her argument on her own assertions and a witness's testimony that her lights were on just after the crash. Even if Bekemans' lights were on at the moment of impact, the jury could have found that she did not turn her lights on early enough to warn Davis of the impending danger. Davis did not engage his brakes before colliding with the bus. Drivers whom Davis had passed mere miles before he collided with Bekemans testified that Davis did not seem to be impaired and that he had passed them safely, in the left lane, albeit at a high rate of speed. A jury could have thus reasonably concluded that Bekemans' conduct had created a substantial risk of death or serious bodily injury.

¶24 *Issue Two: Whether Bekemans was denied her right to be personally present at all critical stages of the trial.*

8

¶25 Both the United States Constitution and the Montana Constitution guarantee a criminal defendant the right to be personally present at all critical stages of trial. *Charlie*, ¶ 40. A critical stage is "'any step of the proceeding where there is potential for substantial prejudice to the defendant.'" *Charlie*, ¶ 40 (quoting *State v. Matt*, 2008 MT 444, ¶ 17, 347 Mont. 530, 199 P.3d 244 (overruled on other grounds)). A defendant who voluntarily fails to appear waives her right to be personally present. *State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1, 101 P.3d 288. An absence is voluntary if the defendant knew of the hearing and failed to appear due to circumstances that were within her control. See *State v. Clark*, 2005 MT 169, ¶ 16, 327 Mont. 474, 115 P.3d 208.

¶26 Bekemans argues that she was denied her right to be personally present at all critical stages of trial because she was not at the November 9, 2010, show-cause hearing. Bekemans had actual notice of the November 9th hearing, however. The District Court mailed a notice of the scheduled hearing to Bekemans the Friday before the Tuesday hearing. Bekemans also spoke with Anderson on the telephone Monday morning. Anderson made sure that Bekemans knew about the hearing. Additionally, Bekemans did not attend the hearing due to circumstances that were within her control. At the rescheduled hearing on November 23, 2010, Bekemans told the District Court judge that she had failed to appear because she did not have enough notice to attend and could not get time off of work. While attending the court proceeding may have been inconvenient, such an excuse is insufficient to make her absence involuntary. Bekemans could have asked Anderson to request a continuance, but she did not do so.

9

¶27    Bekemans was not denied her right to be personally present at the November 9, 2010, hearing by anyone but herself. Bekemans voluntarily failed to appear at the November 9, 2010, hearing and thus waived her right to be personally present. Moreover, she was not prejudiced by her absence. The hearing was continued to a later date and the matter thoroughly examined at that time, with Bekemans present and participating.

¶28    *Issue Three: Whether Bekemans was denied effective assistance of counsel.*

¶29    Bekemans also argues that she was denied her right to effective assistance of counsel because Anderson breached his duty of loyalty to her. We evaluate claims of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466, U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. To prevail on a claim of ineffective assistance of counsel, the defendant must prove both *Strickland* prongs. *Bomar v. State*, 2012 MT 163, ¶ 8, 365 Mont. 474, 285 P.3d 396. If the defendant makes an insufficient showing on one prong, then there is no need to address the other prong. *Bomar*, ¶ 8 (citing *Whitlow*, ¶ 11).

¶30    The first *Strickland* prong requires the defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064). The second *Strickland* prong requires the defendant to show that counsel's deficient performance prejudiced the defense. *Bomar*, ¶ 8. To prove prejudice, "'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome.'" *Kills on Top v. State*, 273 Mont. 32, 49, 901 P.2d 1368, 1379 (1995) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). In limited situations where counsel is burdened by an egregious actual conflict of interest, however, prejudice may be presumed. *State v. Jones*, 278 Mont. 121, 134, 923 P.2d 560, 568 (1996) (citing *Frazer v. U.S.*, 18 F.3d 778 (9th Cir. 1994)).

¶31 In *State v. Jones* we held that an egregious actual conflict of interest exists, justifying a presumption of prejudice, when counsel totally abandons his duties of loyalty and confidentiality to the defendant and essentially joins the prosecution's efforts in obtaining a conviction. In *Jones*, at a hearing two days before trial regarding counsel's motion to withdraw, counsel disclosed that Jones had admitted to him in confidence that he had committed the alleged crime. Jones' counsel told the court in the presence of the prosecution that the case was "open and shut," and he further explained in detail why he believed that Jones was so clearly guilty. The district court in *Jones* denied counsel's motion to withdraw, and Jones was represented by the same attorney at trial. We held that the district court had abused its discretion by denying the motion to withdraw in light of counsel's clear conflict of interest and abandonment of his duty of loyalty to Jones. We vacated the conviction and sentence and remanded the case to the district court for a new trial with new counsel.

¶32 Bekemans argues that, like Jones's counsel, Anderson totally abandoned his duty of loyalty by expressing to the District Court judge his belief that Bekemans was guilty and by telling the judge that she "just doesn't give a rip." Bekemans claims that Anderson expressed his belief that she was guilty by telling the judge that he thought Bekemans should accept the

11

State's plea offer, which he described as "an absolute bonus." The State interprets these comments as merely Anderson's opinion that the offered plea agreement was fair given the facts alleged in the charging documents.

¶33 Even if we accept Bekemans' interpretation of the comments, Anderson did not effectively join the prosecution's efforts in obtaining a conviction. His conduct was far from a complete and total abandonment of his duty of loyalty to Bekemans. Anderson did not disclose any confidential information and did not explain in detail why Bekemans was guilty. Anderson explained his communication breakdown with Bekemans, which was necessary for his motion to be granted.

¶34 Anderson's explanation was not the same as counsel's complete and total abandonment of the duty of loyalty and confidentiality in *Jones*. Moreover, the prejudice that the defendant presumptively suffered in *Jones* was not that the judge heard counsel's remarks, but that the same attorney who abandoned him continued to serve as counsel throughout his trial. We accordingly remanded the case for a new trial with different counsel, but we did not require that the new trial be in front of a different judge. Bekemans could not have suffered the same prejudice that Jones suffered. Unlike in *Jones*, Anderson's motion to withdraw was granted. Bekemans was assigned new counsel who represented her at trial over five months later. *Jones* is thus inapposite, and Bekemans must prove actual prejudice.

¶35 Bekemans contends that she was prejudiced because the comments were made to the judge who presided over her trial and sentenced her. Bekemans points to comments that the

12

judge made while sentencing her to prove that the judge was influenced by counsel's remarks. While sentencing Bekemans, the judge observed that he thought it was Bekemans' intent "that she will control the process entirely, and we will all proceed based upon her determinations and her decisions." The judge further remarked that Bekemans was "in complete denial about her responsibility for anything. . . ."

¶36    The comments that the judge made at sentencing are not proof that the hearings were tainted. Bekemans concludes that the judge was necessarily influenced by Anderson because he expressed his thoughts about Bekemans after Anderson had expressed similar thoughts. Two people can have the same impression of an individual without one having influenced the other, however. The judge's comments at sentencing were a reflection of his own observations throughout the course of Bekemans' prosecution. The judge specifically remarked that his comments were "based upon everything that [he] has seen of this Defendant . . . ." The fact that the judge's observations were similar in sentiment to those conveyed by Anderson is not proof that Anderson influenced the judge or that the judge's impartiality was compromised.

¶37    The record reveals that the District Court judge was not influenced by Anderson's comments. The judge dismissed several charges during trial and also sustained a number of Bekemans' objections. The facts of this case do not warrant a presumption of prejudice, and Bekemans has failed to prove that she did, in fact, suffer actual prejudice. Bekemans has thus failed to satisfy the second *Strickland* prong.

13

¶38    *Issue Four:    Whether the District Court violated Bekemans' constitutional rights by basing its sentence in part on her refusal to acknowledge guilt.*

¶39    The District Court considered many factors while fashioning Bekemans' sentence, including her lack of remorse.  Bekemans contends that the District Court impermissibly inferred her lack of remorse solely from her refusal to admit guilt.  While it is true that a district court cannot impose a harsher sentence based on a defendant's refusal to admit guilt, *State v. Cesnik*, 2005 MT 257, ¶ 25, 329 Mont. 63, 122 P.3d 456, affirmative evidence of a defendant's lack of remorse may justify a sentence enhancement, *State v. Garcia*, 2011 MT 130, ¶ 13, 360 Mont. 537, 254 P.3d 589; *State v. Rennaker*, 2007 MT 10, ¶ 51, 335 Mont. 274, 150 P.3d 960.  If lack of remorse is a factor in the sentencing, then in its pronouncement of the sentence the court must tie its finding of lack of remorse to actions or statements made by the defendant.  *State v. Duncan*, 2008 MT 148, ¶ 54, 343 Mont. 220, 183 P.3d 111 (citing *Rennaker*, ¶ 51).

¶40    In *State v. Imlay*, we held that a defendant cannot receive a harsher sentence for refusing to admit that he committed the crime for which he was convicted or for invoking his privilege against self-incrimination.  249 Mont. 82, 91, 813 P.2d 979, 985 (1991).  In *Imlay*, the defendant was convicted of felony sexual assault.  He was sentenced to a five-year prison sentence, but execution of the sentence was suspended.  As one of the conditions of his suspended sentence, the defendant was required to complete an outpatient sexual therapy program.

14

¶41 Imlay tried to complete the program recommended by his probation officer, but he was rejected as a patient by the counselor after six appointments because he refused to admit that he had committed a sexual offense. He tried to find other programs that would satisfy the requirement, but he was told that no outpatient program in the state would accept him if he continued to deny that he was guilty of sexual misconduct. The District Court found that Imlay had violated the condition requiring him to complete a sexual therapy program and revoked his suspended sentence. We held that revocation of Imlay's suspended sentence violated his right against self-incrimination because he was subjected to a penalty that he would not have otherwise been subjected to if he had admitted guilt. *Imlay*, 249 Mont. at 90, 813 P.2d at 985.

¶42 In *State v. Shreves*, we held that "a sentencing court may not draw a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense of which he stands convicted—i.e. that he is actually innocent." 2002 MT 333, ¶ 22, 313 Mont. 252, 60 P.3d 991. The defendant in *Shreves* testified at trial and asserted his innocence, but he chose not to testify at the sentencing hearing after being convicted. The judge based the sentence in large part on Shreves' silence at the sentencing hearing and failure to explain why the crime had been committed.

¶43 We held that the judge had improperly penalized Shreves for exercising his right to remain silent and remanded for resentencing. In so holding, however, we also made clear that lack of remorse is a proper sentencing factor when evidenced by admissible statements

made by the defendant at any stage of the proceedings, the manner of the commission of the offense as demonstrated by the evidence at trial, or by other competent evidence properly admitted at the sentencing hearing. *Shreves*, ¶ 21.

¶44 In *State v. Cesnik*, the defendant did not receive a harsher sentence because he invoked his right to remain silent, but because he affirmatively maintained his innocence even after being convicted. Cesnik was charged with assault with a weapon after an altercation at a shooting club. At trial, Cesnik did not deny that he had picked up a shotgun, loaded it, and then motioned for an individual to come outside shortly after having an argument with that individual. He did deny, however, that he had done so to threaten the individual. In other words, Cesnik denied that he had the requisite mental state to be convicted of assault with a weapon. A jury nevertheless convicted him after a two-day trial.

¶45 When the probation officer who prepared the presentence report asked Cesnik how the court should proceed with his sentence, Cesnik told the probation officer that his charges should be dropped. Cesnik elected not to testify at the sentencing hearing. Cesnik was given a harsher sentence in large part because he refused to accept responsibility for his acts despite being convicted of the offense. Consistent with our previous holdings, we held that "a sentencing court may not punish a defendant for failing to accept responsibility for the crime when that defendant has expressly maintained his innocence and has a right to appeal his conviction." *Cesnik*, ¶ 25.

¶46 Despite Bekemans' contention, the District Court did not impose a greater sentence based on her refusal to admit guilt. Bekemans' remorse or lack of remorse was discussed at

16

length during the sentencing hearing. The probation officer first testified that he did not think that Bekemans had shown any remorse. Bekemans then testified that she had grieved Davis's death and "felt remorseful all along." Additionally, Bekemans' lack of remorse was a main theme in the prosecution's closing argument and the first thing addressed by the defense in its closing argument. Defense counsel argued specifically that people express remorse in different ways, and that it was his opinion that Bekemans had "expressed extreme sorrow," and was remorseful. Based on the evidence presented at trial, the evidence presented at the sentencing hearing, and Bekemans' conduct throughout the course of the proceedings, however, the judge reached a different conclusion. While pronouncing the court's sentence, the judge remarked that "[i]n the event that the Defendant has grieved or expressed sorrow in this case, literally only she and her counsel are the ones who can ascertain it. It is not palpable; it is not apparent, and it is not detectable by anyone else." This conclusion was based on competent evidence and was not improper.

¶47 *Issue Five: Whether the District Court had authority to restrict Bekemans' eligibility for parole.*

¶48 Lastly, Bekemans argues, and the State concedes, that the District Court exceeded its authority when it required her to complete the Cognitive Principles and Restructuring program before she can be released from the DOC's custody. This requirement effectively serves as a parole restriction.

¶49 When a defendant is sentenced to one year or more of actual incarceration, we review a sentence for legality only. *State v. Herd*, 2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017.

17

A sentence that commits the defendant to the custody of the DOC is not the same as a sentence of incarceration at a state prison. See § 46-18-201(3)(a), MCA. A defendant who is sentenced to incarceration at a state prison must serve her sentence in the prison facility. When a defendant is sentenced to the custody of the DOC, however, the DOC determines the appropriate location for the defendant, which may be someplace other than a state prison. A sentencing judge may only impose a parole restriction when the defendant is sentenced to a term of imprisonment in a state prison exceeding one year. Section 46-18-202(2), MCA. Thus, a judge who commits a defendant to the custody of the DOC cannot also impose a parole restriction. A judge can make recommendations when the defendant is committed to the DOC, but the DOC must determine whether to implement those recommendations.

¶50 Bekemans was sentenced to the custody of the DOC for a term of ten years with five years suspended. She was not sentenced to incarceration in a state prison. The District Court could not legally impose a parole restriction because it did not sentence Bekemans to incarceration in a state prison. We remand to the District Court to strike the requirement that Bekemans complete the Cognitive Principles and Restructuring program before she can be released from the DOC's custody. The court may restate the stricken provision as a recommendation, if it so chooses. Whether Bekemans is required to complete the program will ultimately be determined by the DOC.

¶51 Affirmed in part, reversed in part, and remanded to the District Court for an order to strike the condition of the sentence as specified in paragraph 50 herein.

18

/S/ Mike McGrath

We concur:

/S/ Brian Morris
/S/ Michael E Wheat
/S/ Patricia O. Cotter
/S/ Jim Rice